**Yolanda BERBICK, et al., Plaintiffs,**

v.

**PRECINCT 42, et al., Defendants.**

**No. 11 Civ. 5292(RJS).**

United States District Court, S.D. New York.

Sept. 27, 2013.

Yolanda Berbick, pro se.

Michael A. Cardozo, Corporation Counsel of the City of New York, New York, NY, and Richard Weingarten, of Counsel, New York City Law Department, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

RICHARD J. SULLIVAN, District Judge.

Plaintiffs Yolanda Berbick ("Yolanda") and Clive Berbick ("Clive," and with Yolanda, "Plaintiffs"), proceeding *pro se*, bring this action under 42 U.S.C. § 1983 against New York City Police Lieutenant Ivan Gonzalez ("Gonzalez") and New York City Police Officers Carl Hall ("Hall"), Jason Bragg ("Bragg"), and Liseppe Jordan ("Jordan," and with the other defendants, "Defendants"). Plaintiffs' Second Amended Complaint (Doc. No. 11 (the "SAC")) does not state specifically what rights of the Plaintiffs have been violated. Nevertheless, construing the *pro se* pleadings liberally, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir.2006), the SAC states claims for violations of (1) the Fourteenth Amendment right against deprivation of property without due process of law; (2) the Fourth Amendment right against unreasonable seizures, as incorporated by the Fourteenth Amendment; and (3) the Fourth Amendment right against unreasonable searches, as incorporated by the Fourteenth Amendment. Now before the Court is (1) Defendants' motion for summary judgment on all of the claims (Doc. No. 32); (2) the report and recommendation of the Honorable Kevin Nathaniel Fox, Magistrate Judge, recommending that the motion be denied (Doc. No. 47 (the "Report")); and (3) Defendants' objections to the Report (Doc. No. 48 ("Objections" or "Obj.")). For the reasons set forth below, the Court does not adopt the Report. Instead, the Court (1) grants Defendants summary judgment on the deprivation of property claim, (2) grants Defendants summary judgment on the unreasonable seizure claim, (3) grants Defendants Gonzalez and Hall summary judgment on the unreasonable search claim; and (4) denies Defendants Jordan and Bragg summary judgment on the unreasonable search claim. The Court also dismisses Yolanda as a plaintiff because she fails to state a claim upon which relief can be granted.

## I. BACKGROUND

### A. Facts [1]

On March 4, 2011, Plaintiffs were living together in a homeless shelter in the

---

**1.** The following facts are taken from the Local Rule 56.1 statement submitted by Defendants (Doc. No. 37 ("Def. 56.1")) and the affidavits and exhibits submitted in connection with the motion. Plaintiffs did not submit a Rule 56.1 statement or any briefing on this motion. As such, every fact in Defendants' Rule 56.1 statement is undisputed, *see* Local R. Civ. P. 56.1(c), as long as it is supported by facts in the record, *see Vt. Teddy Bear Co. v. 1–800–Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). In deciding this motion, the Court has also considered the Report, Defendants' Objections, Defendants' memorandum of law in support of summary judgment (Doc. No. 41 ("Mem.")) and Defendants' reply memorandum of law in support of summary judgment (Doc. No. 44 ("Reply")). For all record citations, the page number given refers to the cited document's internal page numbering as printed at the bottom of the document's pages. Where the document does not contain internal page numbering, the page number given refers to the actual page number.

Bronx. (Def. 56.1 ¶ 6; Dep. of Yolanda Berbick, dated Nov. 20, 2012, Doc. No. 33 Ex. C ("Y. Dep."), at 13:12–21.) They had been married for over a decade, and Yolanda was then eight-months pregnant with their first child. (Def. 56.1 ¶¶ 5–6; Y. Dep. at 12:4–14, 37:2–3, 71:19–22.) That afternoon, they went to check on their van, which they had parked on the street, and which served as storage for all of their belongings—most importantly, food and clothing. (Def. 56.1 ¶ 8; Y. Dep. at 36:1–3, 44:7–10; Dep. of Clive Berbick, dated Nov. 20, 2012, Doc. No. 33 Ex. D ("C. Dep."), at 53:1–16, 55:17–22, 58:2–8, 73:16–19.) But when they arrived at the street, the van was gone. (Def. 56.1 ¶ 10; Y. Dep. at 36:2–5.)

Plaintiffs walked to a nearby laundromat, where Yolanda called 9–1–1. (Def. 56.1 ¶ 11; Y. Dep. at 36:6–12.) She told the operator about their missing van and added that she and Clive were hungry and that Clive was feeling ill. (Def. 56.1 ¶ 12; Y. Dep. at 36:15–25, 37:1–16.) In addition to concern over the van, Clive was experiencing sympathetic pregnancy symptoms—also known as Couvade Syndrome—a condition where male partners of pregnant women experience physical and psychological symptoms associated with pregnancy. (Y. Dep. at 37:4–10); *see generally* Arthur Brennan, et al., *A Qualitative Exploration of the Couvade Syndrome in Expectant Fathers*, 25 J. Reprod. & Infant Psychol. 18 (2007) (describing the condition and its incidence). After speaking to the 9–1–1 operator, Plaintiffs waited for the police near where their van had been parked. (Def. 56.1 ¶ 14; Y. Dep. at 37:17–23.) When Plaintiffs began to feel too cold, they went inside a nearby church, where Yolanda called 9–1–1 again. (Def. 56.1 ¶¶ 15–16; Y. Dep. at 38:2–9.) She again told the operator about the missing van and that Clive was sick, and this time she asked the operator to send an ambulance for Clive. (Def. 56.1 ¶ 16; Y. Dep. at 39:20–25, 40:1–5.)

About ten minutes later, Defendants—four uniformed police officers—arrived. (Def. 56.1 ¶ 17; Y. Dep. at 40:21–24.) Plaintiffs came out from the church and explained that their van, along with all of their food and clothing, was missing, that they were both hungry, and that Clive was not feeling well. (Def. 56.1 ¶¶ 19–20; Y. Dep. at 43:10–17, 44:1–23; C. Dep. at 71:20–25; Decl. of Ivan Gonzalez, dated Jan. 11, 2013, Doc. No. 36 ("Gonzalez Decl."), ¶ 4.) Plaintiffs did not, however, mention Clive's sympathetic pregnancy symptoms. (C. Dep. at 119:14–21, 121:13–17.) One of the Defendants conducted a search on his patrol vehicle's computer and told Plaintiffs that the van had been towed because of unpaid parking tickets. (Def. 56.1 ¶¶ 7, 9, 22–23; C. Dep. at 54:7–9, 23–25, 55:1–8, 77:1–9; *see also* Decl. of Debbie Walsh, dated Jan. 10, 2013, Doc. No. 34 ("Walsh Decl."), ¶¶ 5–7.)

Soon afterwards, an ambulance arrived. (Def. 56.1 ¶ 28; C. Dep. at 85:1–13; Gonzalez Decl. ¶ 5.) An Emergency Medical Technician (the "EMT") stepped out and spoke to Clive. (Def. 56.1 ¶ 30; C. Dep. at 91:23–25, 92:1–6.) The EMT asked if Clive wanted his blood-pressure checked, and Clive said he did. (Def. 56.1 ¶¶ 30–31; C. Dep. at 92:23–25, 93:1–3, 94:1–18.) Clive began to follow the EMT to the ambulance, but before Clive got into the ambulance, Defendants Jordan and Bragg frisked him. (Def. 56.1 ¶¶ 31, 33; C. Dep. at 93:4–19, 94:22–25, 95:1–7, 96:6–20; Mem. at 8.) Once in the ambulance, Clive explained that he was hungry and felt Yolanda's pregnancy symptoms. (Def. 56.1 ¶ 39; C. Dep. at 95:20–25, 96:1–9, 119:10–21, 126:9–21; Decl. of Victor Basabe, dated Jan. 10, 2013, Doc. No. 35 ("Basabe Decl."), ¶ 9.) The EMT found that Clive's blood-pressure was extremely

high and told Clive that he should go to the hospital. (Def. 56.1 ¶¶ 40–41; C. Dep. at 98:7–11; Basabe Decl. ¶¶ 10, 12.) Both Clive and Yolanda agreed to go. (Def. 56.1 ¶ 42; Y. Dep. at 56:17–20; C. Dep. at 103:17–25; Basabe Decl. ¶ 13.)

Once at the hospital, Clive was taken to the emergency room. (Def. 56.1 ¶ 49; C. Dep. at 116:7–13.) Clive explained his symptoms, and a nurse suggested that he be admitted to the psychiatric ward. (Def. 56.1 ¶¶ 51–52; C. Dep. at 118:12–25; 121:18–25, 122:1–5.) But Clive refused. (Def. 56.1 ¶ 52; C. Dep. at 122:14–25.) Instead, Clive was treated for his blood pressure while Yolanda waited. (Def. 56.1 ¶ 53; Y. Dep. at 65:10–15; C. Dep. at 124:6–21.)

### B. Procedural History

Plaintiffs initiated this action on July 5, 2011 by filing the Complaint. (Doc. No. 2.) The Complaint was brought against the 42nd Precinct of the New York Police Department and focused on the towing of the van and on Clive's close encounter with the psychiatric unit. (*Id.*) Because the 42nd Precinct is not a suable entity, the Court dismissed the case against that defendant and granted Plaintiffs leave to amend the Complaint. (Doc. No. 4); *cf. Toliver v. N.Y. City Dep't of Corr.*, No. 10 Civ. 822(RJS)(JCF), 2013 WL 3779125, at *7 (S.D.N.Y. July 8, 2013) (holding that New York City agencies cannot be sued). Plaintiffs filed the Amended Complaint on October 17, 2011 against four "John Doe" defendants and added allegations that Clive had been frisked. (Doc. No. 5.) On January 30, 2012, the New York City Corporation Counsel informed the Court of the names of the four police officers who responded to Plaintiffs' 9–1–1 calls (Doc. No. 10), and on February 7, 2012, Plaintiffs filed the SAC to add Defendants' names. (SAC.) Defendants all answered the SAC by June 2012. (Doc. Nos. 13, 16, 23.) On June 20, 2012, the Court referred the case to Magistrate Judge Kevin Nathaniel Fox for general pretrial supervision and for a report and recommendation on all dispositive pre-trial motions. (Doc. No. 22.)

Defendants moved for summary judgment on all of Plaintiff's claims on January 11, 2013. (Doc. No. 32.) Plaintiffs submitted an affirmation in opposition but did not submit any memorandum in opposition. (Doc. No. 40.)

Judge Fox issued his report and recommendation to the Court on August 14, 2013. (Report.) The Report recommended that the Court deny summary judgment for three reasons. First, Judge Fox found that Defendants had not supported their motion with admissible evidence because the depositions Defendants relied on were not signed or certified. (Report at 4.) Second, Judge Fox found that the facts Defendants contended were undisputed were not actually undisputed because Defendants had included a footnote in their Rule 56.1 Statement claiming that "the facts contained [therein] [were] undisputed solely for the purposes of [D]efendants' motion for summary judgment" and reserving "the right to dispute any such fact were [the] case to proceed to trial." (Report at 4–5.) And third, Judge Fox found that facts taken from the depositions were not undisputed because Plaintiffs had submitted an affidavit claiming that the deposition transcripts were inaccurate. (Report at 5; *see* Doc. No. 43 at 3.)

Defendants timely filed objections to the Report on September 3, 2013. (Obj.)

### II. Discussion

Because this case was referred to Judge Fox for dispositive pre-trial motions, the Court must proceed in two steps. First, the Court must decide whether to adopt the Report. 28 U.S.C. § 636(b)(1); Fed.

R.Civ.P. 72(b)(3). If the Court does not adopt the Report, the Court must then decide for itself whether to grant Defendants' motion for summary judgment. The Court addresses each of these in turn.

### A. Legal Standards

#### 1. The Magistrate Judge's Report and Recommendation

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, if a court refers a dispositive motion to a magistrate judge, the "magistrate judge must enter a recommended disposition," also known as a report and recommendation. Fed.R.Civ.P. 72(b)(1). Absent objections, a court may accept any finding or recommendation in a report that is not clearly erroneous. *See Edwards v. Mazzuca*, No. 00 Civ. 2290(RJS)(KNF), 2007 WL 2994449, at *1 (S.D.N.Y. Oct. 15, 2007) (citing Fed. R.Civ.P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985)). When a party properly makes objections to a finding or recommendation, however, the court must review those findings or recommendations *de novo. See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b)(3); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir.1997).

In reviewing a report, a court may consider evidence that was not submitted to the magistrate judge. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b)(3); *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998). But "courts generally do not consider new evidence raised in objections to a magistrate judge's report and recommendation absent a compelling justification for failure to present such evidence to the magistrate judge." *Azkour v. Little Rest Twelve, Inc.*, No. 10 Civ. 4132(RJS)(KNF), 2012 WL 1026730, at *2 (S.D.N.Y. Mar. 27, 2012) (internal quotation marks and alterations omitted).

#### 2. Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a court should grant summary judgment on a claim "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, a court should grant summary judgment to a party if the facts in the record could not support any outcome other than victory for that party. Thus, in deciding the motion, a court must view all facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quotation marks omitted).

### B. The Report

Defendants object to each of the Report's three findings. (Obj. at 2.) The Court therefore reviews those findings *de novo.*

#### 1. The Uncertified Depositions

In support of the motion for summary judgment, Defendants submitted, among other things, two documents purporting to be excerpts from depositions of Plaintiffs. (*See* Doc. No. 33 Ex. C & Ex. D.) These documents were the primary source of Defendants' facts. (*See* Def. 56.1.) Judge Fox, however, identified a problem: the two documents were not signed and certified. (Report at 4.) Although Judge Fox did not explain why this was a problem, he was presumably focusing on Rule 30(f)(1) of the Federal Rules of Civil Procedure, which requires all depositions to include a certification that the transcript is accurate, signed by the officer overseeing the deposition. *See* Fed.R.Civ.P. 30(f)(1). Judge Fox reasoned that, without the certification, the documents were not admissible

and thus could not be used to support summary judgment. (Report at 4.)

In their Objections, Defendants claim "that the deposition exhibits ... were inadvertently [filed] without the respective certifications." (Obj. at 15). They attempt to correct this error by providing in the Objections evidence that the depositions were, in fact, properly certified. (Obj. at 15–16; *see* Doc. No. 49 Ex. A at 91, Ex. B at 149; Decl. of Gena Nardone, dated Jan. 20, 2013, Doc. No. 49 Ex. D at Ex. A, ¶ 3.)

Defendants' (or their attorneys') neglect, however, is not "a compelling justification for failure to present such evidence to the magistrate judge." *Azkour*, 2012 WL 1026730, at \*2. A motion referred to a magistrate judge is not a "trial run[ ]." *Hynes*, 143 F.3d at 656 (internal quotation marks omitted) (quoting *Wallace v. Tilley*, 41 F.3d 296, 302 (7th Cir.1994)). If mere negligence could excuse a failure to present a full record to the magistrate judge, parties would have no incentive to take referrals seriously, thus stripping the referral process of much of its usefulness. The Court therefore declines to consider Defendants' new evidence showing that the depositions were certified. *See McEachin v. Walker*, 147 Fed.Appx. 223, 224 (2d Cir.2005) ("[R]efusal to consider additional evidence proffered in the first instance after a magistrate's recommendation is within the discretion of the district court." (citing *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40 n. 3 (2d Cir.1990))).

■ Nevertheless, the Court holds that even without the certification, the excerpts can be considered in a motion for summary judgment. The purpose of the certification is authentication—evidence that the deposition is what it is claimed to be. *See* Fed.R.Evid. 901(a), (b)(1). In this case, there is no certification. But there is a declaration by Defendants' counsel, submitted with the original motion, stating that the excerpts were taken from Plaintiffs' deposition, which counsel was "fully familiar with." (Decl. of Richard Weingarten, dated Jan. 11, 2013, Doc. No. 33, ¶¶ 1– 2.) That declaration is a sworn statement by a person with knowledge that the excerpts are statements by Plaintiffs, and is therefore sufficient as authentication. *See* Fed.R.Evid. 901(b)(1). Under these circumstances, excerpts are just as good as certified depositions. Accordingly, the Court does not adopt the Report's finding that the uncertified excerpts cannot be used to support summary judgment.

## 2. The Rule 56.1 Statement Footnote

A Rule 56.1 statement is "a short and concise statement ... of the material facts as to which the moving party contends there is no genuine issue to be tried." Local R. Civ. P. 56.1(a). In Defendants' Rule 56.1 statement, Defendants included the following footnote: "Defendants note that the facts contained herein are undisputed solely for purposes of [D]efendants' motion for summary judgment, and reserve the right to dispute any such fact were this case to proceed to trial." (Def. 56.1 at 2 n. 1.) Judge Fox found that this statement meant that the facts in the Rule 56.1 statement were not, in reality, undisputed and that summary judgment was therefore inappropriate. (Report at 4–5.)

■ The Court respectfully disagrees. Summary judgment is appropriate only when there are no genuinely disputed facts. Fed.R.Civ.P. 56(a). Any dispute about the facts, however, must be established by record evidence. *See Matsushita*, 475 U.S. at 586–87, 106 S.Ct. 1348. A party's personal belief that the true facts are different from the facts established by the record cannot create a genuine dispute. *See Holt v. KMI–Continental, Inc.*,

95 F.3d 123, 130 (2d Cir.1996). Here, Defendants' footnote implies that Defendants might not truly believe the facts in the record. But that belief is irrelevant for summary judgment. Accordingly, the Court does not adopt the Report's finding that Defendants' footnote makes summary judgment unwarranted.

The Court, however, adds a word of warning for Defendants. A reservation of the right to dispute facts at trial does not immunize a party from the risks of not disputing facts at summary judgment. On cross-motion by an opposing party—or by the court's own initiative—a court can grant summary judgment against the originally moving party. *See* Fed.R.Civ.P. 56(a), (f). Moreover, even with such a reservation, a court can determine that certain facts are established and forbid parties from contesting those facts at trial. Fed.R.Civ.P. 56(g). A court is not bound by a party's hedging.

### 3. Plaintiffs' Claims of Transcript Tampering

On January 10, 2013, Plaintiffs each wrote letters to Judge Fox claiming that their deposition transcripts were inaccurate and asking Judge Fox to personally oversee a second round of depositions. (Doc. No. 49 Ex. C.) Judge Fox denied the request that he oversee any depositions, but gave Plaintiffs one month to review their deposition transcripts and to provide Defendants' counsel with a list of corrections. (Doc. No. 39.) Plaintiffs, however, never provided any corrections. Instead, after the deadline for reviewing the transcripts had passed, they filed a motion stating that the transcript had been tampered with and requesting Judge Fox to review the transcript. (Doc. No. 43.) Judge Fox denied the motion. (Doc. No. 45.) Nevertheless, in the Report, Judge Fox found that Plaintiffs' claims that the transcripts were inaccurate created a dis-

pute about the facts drawn from the deposition. (Report at 4–5.)

The Court again respectfully disagrees. The only specific allegations of tampering that Plaintiffs make involve an encounter between Plaintiffs and police officers from the 28th Precinct (Doc. No. 49 Ex. C) and questions about whether Clive ever cut himself (Doc. No. 43 at 3), neither of which is at issue in this case. Thus, Plaintiffs do not dispute any material facts. *See* Fed. R.Civ.P. 56(a). Moreover, Judge Fox gave Plaintiffs time to identify and correct all errors in the transcripts. To whatever extent Plaintiffs intended to challenge other, material facts, they had the opportunity to do so and failed to take advantage of it. *Pro se* parties are given a great deal of leeway, but they must comply with clear rules and court orders. *See Caidor v. Onondaga Cnty.*, 517 F.3d 601, 605 (2d Cir.2008). Accordingly, the Court does not adopt the Report's finding that Plaintiffs' claims of transcript tampering create disputed facts.

Because the Court does not adopt any of the Report's findings, it now reaches the merits of the summary judgment motion.

### C. Summary Judgment

Here, only Defendants have submitted evidence. Thus, none of the facts in the record are disputed. The only question is whether these facts, seen in the light most favorable to Plaintiffs, establish that Defendants are entitled to judgment as a matter of law on each of Plaintiffs' claims.

Plaintiffs' complaint, liberally construed, makes three claims under 42 U.S.C. § 1983. (SAC at 1.) First, Plaintiffs allege that the towing of the van was a deprivation of property without due process of law. (*Id.* at 3–4.) Second, they allege that they were unlawfully seized when they entered the ambulance and were taken to the hospital. (*Id.*) And third, they allege that

Clive was unlawfully searched when Defendants frisked him. (*Id.*)

■ Because these claims are brought under § 1983, and because Defendants are government officials, Defendants are eligible for a qualified immunity defense against each claim. *Wyatt v. Cole*, 504 U.S. 158, 167–68, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992). Qualified immunity shields officials from liability unless "it would be clear to a reasonable officer that [her or] his conduct was unlawful in the situation [she or] he confronted." *Gilles v. Repicky*, 511 F.3d 239, 244 (2d Cir.2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). This is an affirmative defense—to the extent the defense turns on factual issues, a defendant bears the burden of proof. *Sudler v. City of New York*, 689 F.3d 159, 174 (2d Cir.2012).

The Court addresses each claim in turn.

### 1. The Deprivation of the Van

■ Defendants are entitled to summary judgment on the first claim. Putting aside qualified immunity, the claim fails on the merits. First, the undisputed facts show that Defendants had nothing to do with the taking of the van. *See In re Murphy*, 482 Fed.Appx. 624, 627 (2d Cir. 2012) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award under § 1983 . . . ." (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994))). The van was seized and auctioned by City Marshall Roger Hammer, not by any of the defendants. (Walsh Decl. ¶¶ 5–6, Ex. A.) Second, even if Defendants had been involved, there was no constitutional violation. The Fourteenth Amendment prohibits deprivation of property only to the extent the property is taken without due process of law. *See Zinermon v. Burch*, 494 U.S. 113, 126, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). As Judge McMahon explained in

*Schaer v. City of New York*, No. 09 Civ. 7441(CM), 2011 WL 1239836, at *7–9 (S.D.N.Y. Mar. 25, 2011), New York City's procedures for ticketing and towing cars provide ample legal process. No fact in the record establishes that the van's seizure occurred outside of these procedures. Accordingly, the Court grants Defendants summary judgment on this claim.

### 2. The Seizure of Plaintiffs

■ Defendants are also entitled to summary judgment on the second claim. Again putting aside qualified immunity, the claim fails on the merits and for the same reasons as the first claim. First, the undisputed facts show that Defendants had no role in getting Plaintiffs into the ambulance or to the hospital. *See In re Murphy*, 482 Fed.Appx. at 627. Plaintiffs were led to the ambulance and were taken to the hospital by the EMT, not by any of the defendants. (Y. Dep. at 56:17–20; C. Dep. at 94:22–25, 103:17–25; Basabe Decl. ¶¶ 5, 11, 13.). Second, even if Defendants had been involved, there was no seizure and thus no constitutional violation. "A seizure of the person . . . occurs when, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Kaupp v. Texas*, 538 U.S. 626, 629, 123 S.Ct. 1843, 155 L.Ed.2d 814 (2003) (internal quotation marks omitted). This is an objective test, meaning that a person's subjective belief that he or she is seized is irrelevant. *See Brendlin v. California*, 551 U.S. 249, 260, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). Here, there is nothing at all in the record to show that a reasonable person would not have felt free to leave at any moment. Thus, Plaintiffs have not met their burden of showing a

seizure, and Defendants are entitled to prevail as a matter of law.

### 3. The Search of Clive

■ Defendants do not fare as well on the third claim. The undisputed facts show that two of the defendants frisked Clive. (C. Dep. at 96:6–20.) To provide context, a frisk is "a careful exploration of the outer surfaces of a person's clothing all over his or her body in an attempt to find weapons." *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Frisks are searches under the Fourth Amendment and are therefore impermissible unless reasonable. *Id.* at 9, 16, 88 S.Ct. 1868.

Defendants argue that summary judgment should be granted in favor of Defendants Gonzalez and Hall because they were not personally involved in the frisk. The Court agrees and grants Defendants Gonzalez and Hall summary judgment.

For Defendants Jordan and Bragg, Defendants argue that the facts show that this frisk was reasonable and that there was no constitutional violation. Defendants further argue that even if there was a constitutional violation, a reasonable officer could have believed the frisk to be reasonable and that Defendants are therefore entitled to qualified immunity. Both of these arguments ultimately fail.

### a. Summary Judgment for Defendants Gonzalez and Hall

As discussed previously, "personal involvement [by a] defendant[ ]" is a necessary element of a § 1983 claim against that defendant. *In re Murphy*, 482 Fed.Appx. at 627. Here, it is undisputed that Clive

was frisked by only two officers—a "white or Spanish" man and an African–American woman. (C. Dep. at 93:8–13.) Defendants identify Defendant Bragg as the man and Defendant Jordan as the woman. (Mem. at 8.) [2] Accordingly, because Defendants Gonzalez and Hall did not participate in the frisk, they are entitled to summary judgment. Defendants Jordan and Bragg, however, must establish either the reasonableness of the search or qualified immunity.

### b. The Reasonableness of the Frisk

■ Frisks are reasonable when necessary to protect officer safety. For instance, a frisk is permissible when an officer could "reasonably believe [that the person frisked] is armed and dangerous." *United States v. Elmore*, 482 F.3d 172, 178 (2d Cir.2007). Here, there are no facts in the record that could support a reasonable belief that Clive was armed or dangerous. The sole record evidence of what the defendants observed is the declaration of Ivan Gonzalez, and it mentions no suspicious behavior or facts. (Gonzalez Decl.). Nothing in the excerpts from the depositions of Clive or Yolanda indicates that Clive acted in a suspicious manner. The only possibly supportive evidence in the record is the EMT's statement that Clive "appeared to be acting irrational[ly]" (Basabe Decl. ¶ 9), but even that does not help Defendants. First, Defendants do not cite to this part of the record in their motion, and the Court therefore need not consider it. *See* Fed.R.Civ.P. 56(c)(3); *Morales v. N.Y. State Dep't of Labor*, No. 12–3331–cv, 2013 WL 3604909, at *1 (2d Cir. July 16, 2013) ("Federal Rule of Civil Procedure 56

---

**2.** The Court ordinarily may not consider statements in legal memoranda as part of the factual record on summary judgment. *See* Fed.R.Civ.P. 56(c)(1). Here, however, Defendants were ordered by the Court to assist Plaintiffs in identifying the officers involved in

this incident. (Doc. No. 8.) Thus, the Court will take notice of the fact, which is undisputed by either party, that Defendants Jordan and Bragg were the officers who conducted the frisk of Clive.

does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute. A district court is obligated only to consider the materials cited to it by the parties." (internal quotation marks and citations omitted)). Second, even if the Court considered the EMT's statement, and even if irrational behavior alone could support reasonable suspicion that a person is armed and dangerous—a dubious proposition—there is no evidence that Defendants saw any irrational behavior. The EMT's statement describes only what he saw in the ambulance. It is undisputed that Defendants were never in the ambulance. (Def. 56.1 ¶ 35.) Although a fact finder could infer that Clive also acted irrationally outside of the ambulance, such an inference would be inappropriate at summary judgment, where all facts must be viewed in the light most favorable to Plaintiffs. *See Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. Defendants half-heartedly argue that a reasonable officer could have thought Clive was dangerous because he was "particularly concerned about his missing vehicle" and "believed his van [had been] taken by the NYPD" as part of a "conspiracy" against Clive and Yolanda. (Mem. at 9.) But this argument misstates the record. Clive acknowledged at his deposition that he believed—at the time of the deposition—that there was a conspiracy against him. (C. Dep. at 46:4–25.) No evidence, however, shows that Clive believed in such a conspiracy at the time of the incident or that he mentioned any such beliefs to Defendants. Thus, on the record currently before the Court, the frisk cannot be justified by a reasonable belief that Clive was armed and dangerous. Indeed, Defendants ultimately acknowledge as much. (*See* Mem. at 9 ("Admittedly, ... Clive was not the suspect of a crime, and ... the officers had no reason to believe that Clive was armed....").)

Defendants instead argue that even absent evidence that Clive was armed or dangerous, it was reasonable to frisk him because he was entering "the rear area of [an] ambulance—an area which would leave the EMT exposed and vulnerable if Clive were armed." (Mem. at 9.) To support this position, Defendants rely on *United States v. McCargo,* in which the Second Circuit addressed the reasonableness of a frisk done "pursuant to a policy of the Buffalo Police Department that required pat-downs before transporting any person in a police car to ensure officer safety." 464 F.3d 192, 199 (2d Cir.2006). There, the Circuit held that the search was reasonable for two reasons. First, transportation of a person in the back of a police car is uniquely dangerous. And second, the frisk was conducted pursuant to a policy that was "administrative and universally applied," which "eliminate[d] any selective-use concern." *Id.* at 201.

The Court agrees with Defendants that the first reason could apply in this case. The back of an ambulance is a dangerous place for the same reasons that the back of a police car is. *Cf. McCargo,* 464 F.3d at 200 (listing numerous reasons that the back of a police car is dangerous). Moreover, police officers are generally more able to defend themselves than are EMTs. And while *McCargo* speaks in terms of "officer safety," *id.* at 200, the Court does not believe that the Fourth Amendment values the safety of officers more than the safety of anyone else, including EMTs.

██ Yet Defendants stumble at the second reason. The Circuit's focus on departmental policy in *McCargo* was not mere bolstering—it was essential to the case's outcome. The Circuit repeatedly stressed the importance of the policy:

- "The administrative nature of the search is evidenced by the existence of

the Buffalo Police's department-wide policy that requires the pat-down whenever a person is transported in a police car. The fact that the policy is administrative and universally applied to all who are transported eliminates any selective-use concern." *Id.* at 201.

● "Courts have long upheld suspicionless searches conducted under an official policy as not violative of the Fourth Amendment." *Id.* (citing cases).

● "[W]e see little danger that policies such as these might be used as a pretext for a suspicionless frisk." *Id.* at 202.

Moreover, the Circuit emphasized that *McCargo* was not a license to frisk without suspicion anytime there was a high risk of danger:

> Our holding in this case is a narrow one. We are not holding that the police are entitled to pat down a person, absent reasonable suspicion that he is armed, simply because they have [lawfully] stopped that person.... However, in cases where the police may lawfully transport a suspect to the scene of the crime in the rear of a police car, *the police may carry out a departmental policy,* imposed for reasons of officer safety, by patting down that person.

*Id.* at 202 (emphasis added). Thus, this case cannot fall under *McCargo's* reasoning without a generally applicable policy that would have required Defendants to frisk Clive. The Court finds no evidence in the record to suggest that New York City has the same policy as Buffalo in this regard. Therefore, the reasonableness of the search is not established by the undisputed facts.

### c. Qualified Immunity

Even without undisputed facts showing that the search was reasonable, Defendants would be entitled to summary judgment if the undisputed facts supported a qualified immunity defense. Defendants would be entitled to immunity if they reasonably could have believed the frisk was legal. *See Walczyk v. Rio,* 496 F.3d 139, 154 (2d Cir.2007). For convenience, the Court will address the qualified immunity issue by inquiring whether the undisputed facts show that Defendants could have reasonably believed that (1) the frisk was legal absent justification; (2) the frisk was legal because of a reasonable belief that Clive was armed and dangerous; or (3) the frisk was legal under *McCargo.*

The first issue is simple. No one could reasonably believe that a frisk is legal without justification. The unconstitutionality of unjustified frisks has been clearly established since *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Thus, the undisputed facts clearly do not show that Defendants could have reasonably believed the frisk was legal on this ground.

The second issue is also simple. As discussed above, there are no undisputed facts in the record that could support a reasonable belief that Clive was armed and dangerous. It is clearly established that reasonable suspicion that a person is armed and dangerous must be supported by at least some facts. *Terry,* 392 U.S. at 21, 88 S.Ct. 1868. And as Defendants themselves concede, "the officers had no reason to believe that Clive was armed." (Mem. at 9.) Thus, the undisputed facts do not show that Defendants could have reasonably believed they had reasonable suspicion to frisk Clive.

The third issue is more difficult, but only slightly. Qualified immunity would be appropriate if *McCargo* even arguably applied to the undisputed facts in this case. *Walczyk,* 496 F.3d at 154 ("[A]n officer is still entitled to qualified immunity if officers of reasonable competence could disagree on the legality of the action at issue

in its particular factual context." (internal quotation marks omitted)). Nonetheless, the Court finds that even this lesser burden has not been met. As noted above, *McCargo* involved a universally applied policy. Here, there is no evidence of such a policy. To the contrary, the record evidence reflects that frisks were not even performed uniformly in this case, since Yolanda also entered the ambulance (Def. 56.1 ¶ 34), but there is no evidence showing that Yolanda was frisked. Thus, the undisputed facts do not show that Defendants could have reasonably believed the frisk was legal under *McCargo*.

Simply put, Defendants have offered no legal arguments and no facts in the record to support a reasonable belief that the frisk was legal on any theory. Accordingly, Defendants' qualified immunity argument must fail.

*   *   *

Based on the evidence in the record, a reasonable fact finder could find facts that would support a ruling in favor of Plaintiffs. Accordingly, Defendants Jordan and Bragg are not entitled to summary judgment on the unlawful frisk claim.

### D. Dismissal of Yolanda Berbick

The only remaining live claim in the case is the frisk claim. The SAC does not specify if this claim is brought in Clive's name alone or by both Plaintiffs. To whatever extent the claim is brought in Yolanda's name, however, the Court now dismisses it.

■■■ Plaintiffs' action is a § 1983 claim. The essential elements of such a claim are: (1) deprivation of the plaintiff's federal rights (2) by a person acting under color of state law. *Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir.2010). The federal right allegedly deprived in the frisk claim is Clive's Fourth Amendment right to be free from unreasonable searches. That allegation supports a proper claim for Clive, but not for Yolanda, who nowhere alleges that she was frisked or otherwise searched by Defendants. Yolanda cannot assert a claim for deprivation of Clive's Fourth Amendment right, since "Fourth Amendment rights are personal rights which ... may not be vicariously asserted." *Rakas v. Illinois,* 439 U.S. 128, 133–34, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (quoting *Brown v. United States,* 411 U.S. 223, 230, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973)). Thus, Yolanda has failed to state a claim upon which relief can be granted. Accordingly, the Court dismisses Yolanda from the case. 28 U.S.C. § 1915(e)(2)(B)(ii) (requiring district courts, in *in forma pauperis* cases, to dismiss an action at any time "if the court determines that ... [the action] fails to state a claim upon which relief may be granted").

### III. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED THAT Defendants' motion for summary judgment on Plaintiffs' claim that they were deprived of their van without due process of law is GRANTED.

IT IS FURTHER ORDERED THAT Defendants' motion for summary judgment on Plaintiffs' claim that they were unlawfully seized is GRANTED.

IT IS FURTHER ORDERED THAT Defendants Gonzalez's and Hall's motion for summary judgment on Plaintiffs' claim that Clive was unlawfully frisked is GRANTED.

IT IS FURTHER ORDERED THAT Defendants Jordan's and Bragg's motion for summary judgment on Plaintiffs' claim that Clive was unlawfully frisked is DENIED.

IT IS FURTHER ORDERED THAT Yolanda Berbick is dismissed as a plaintiff.

IT IS FURTHER ORDERED THAT the parties shall appear on November 1, 2013 at 11:00 a.m. in Courtroom 905 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York for a pretrial conference.

The Clerk of the Court is respectfully directed to terminate the motions pending at Doc. No. 32.

SO ORDERED.

