538 U. S. 1 (2003)
 ROBERT KAUPP
v.
TEXAS.
 No. 02-5636.
 Supreme Court of United States.
 Decided May 5, 2003.
 
 ON PETITION FOR WRIT OF CERTIORARI TO THE COURT OF APPEALS OF TEXAS, FOURTEENTH DISTRICT.
 PER CURIAM.
 
 
 1
 This case turns on the Fourth Amendment rule that a confession "obtained by exploitation of an illegal arrest" may not be used against a criminal defendant. Brown v. Illinois, 422 U. S. 590, 603 (1975). After a 14-year-old girl disappeared in January 1999, the Harris County Sheriff's Department learned she had had a sexual relationship with her 19-year-old half brother, who had been in the company of petitioner Robert Kaupp, then 17 years old, on the day of the girl's disappearance. On January 26th, deputy sheriffs questioned the brother and Kaupp at headquarters; Kaupp was cooperative and was permitted to leave, but the brother failed a polygraph examination (his third such failure). Eventually he confessed that he had fatally stabbed his half sister and placed her body in a drainage ditch. He implicated Kaupp in the crime.
 
 
 2
 Detectives immediately tried but failed to obtain a warrant to question Kaupp.[1] Detective Gregory Pinkins nevertheless decided (in his words) to "get [Kaupp] in and confront him with what [the brother] had said." App. A to Pet. for Cert. 2. In the company of two other plain clothes detectives and three uniformed officers, Pinkins went to Kaupp's house at approximately 3 a.m. on January 27th. After Kaupp's father let them in, Pinkins, with at least two other officers, went to Kaupp's bedroom, awakened him with a flashlight, identified himself, and said, "`we need to go and talk.'" Ibid. Kaupp said "`Okay.'" Ibid. The two officers then handcuffed Kaupp and led him, shoeless and dressed only in boxer shorts and a T-shirt, out of his house and into a patrol car. The state points to nothing in the record indicating Kaupp was told that he was free to decline to go with the officers.
 
 
 3
 They stopped for 5 or 10 minutes where the victim's body had just been found, in anticipation of confronting Kaupp with the brother's confession, and then went on to the sheriff's headquarters. There, they took Kaupp to an interview room, removed his handcuffs, and advised him of his rights under Miranda v. Arizona, 384 U. S. 436 (1966). Kaupp first denied any involvement in the victim's disappearance, but 10 or 15 minutes into the interrogation, told of the brother's confession, he admitted having some part in the crime. He did not, however, acknowledge causing the fatal wound or confess to murder, for which he was later indicted.
 
 
 4
 After moving unsuccessfully to suppress his confession as the fruit of an illegal arrest, Kaupp was convicted and sentenced to 55 years' imprisonment. The State Court of Appeals affirmed the conviction by unpublished opinion, concluding that no arrest had occurred until after the confession. The state court said that Kaupp consented to go with the officers when he answered "`Okay'" to Pinkins's statement that "`we need to go and talk.'" App. A to Pet. for Cert. 2, 6. The court saw no contrary significance in the subsequent handcuffing and removal to the patrol car, given the practice of the sheriff's department in "routinely" using handcuffs for safety purposes when transporting individuals, as officers had done with Kaupp only the day before. Id., at 6. The court observed that "a reasonable person in [Kaupp's] position would not believe that being put in handcuffs was a significant restriction on his freedom of movement." Ibid. Finally, the state court noted that Kaupp "did not resist the use of handcuffs or act in a manner consistent with anything other than full cooperation." Id., at 6-7. Kaupp appealed, but the Court of Criminal Appeals of Texas denied discretionary review. App. B to Pet. for Cert. We grant the motion for leave to proceed in forma pauperis, grant the petition for certiorari, and vacate the judgment below.
 
 
 5
 A seizure of the person within the meaning of the Fourth and Fourteenth Amendments occurs when, "taking into account all of the circumstances surrounding the encounter, the police conduct would `have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" Florida v. Bostick, 501 U. S. 429, 437 (1991) (quoting Michigan v. Chesternut, 486 U. S. 567, 569 (1988)). This test is derived from Justice Stewart's opinion in United States v. Mendenhall, 446 U. S. 544 (1980), see California v. Hodari D., 499 U. S. 621, 627-628 (1991), which gave several "[e]xamples of circumstances that might indicate a seizure, even where the person did not attempt to leave," including "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Mendenhall, supra, at 554.
 
 
 6
 Although certain seizures may be justified on something less than probable cause, see, e.g., Terry v. Ohio, 392 U. S. 1 (1968), we have never "sustained against Fourth Amendment challenge the involuntary removal of a suspect from his home to a police station and his detention there for investigative purposes . . . absent probable cause or judicial authorization." Hayes v. Florida, 470 U. S. 811, 815 (1985)[2]; cf. Payton v. New York, 445 U. S. 573, 589-590 (1980); compare Florida v. Royer, 460 U. S. 491, 499 (1983) (plurality opinion) ("[The police] may [not] seek to verify [mere] suspicions by means that approach the conditions of arrest"), with United States v. Sokolow, 490 U. S. 1, 7 (1989) ("[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity `may be afoot,' even if the officer lacks probable cause" (quoting Terry, supra, at 30)). Such involuntary transport to a police station for questioning is "sufficiently like arres[t] to invoke the traditional rule that arrests may constitutionally be made only on probable cause." Hayes, supra, at 816.
 
 
 7
 The state does not claim to have had probable cause here, and a straightforward application of the test just mentioned shows beyond cavil that Kaupp was arrested within the meaning of the Fourth Amendment, there being evidence of every one of the probative circumstances mentioned by Justice Stewart in Mendenhall.[3] A 17-year-old boy was awakened in his bedroom at three in the morning by at least three police officers, one of whom stated "we need to go and talk." He was taken out in handcuffs, without shoes, dressed only in his underwear in January, placed in a patrol car, driven to the scene of a crime and then to the sheriff's offices, where he was taken into an interrogation room and questioned. This evidence points to arrest even more starkly than the facts in Dunaway v. New York, 442 U. S. 200, 212 (1979), where the petitioner "was taken from a neighbor's home to a police car, transported to a police station, and placed in an interrogation room." There we held it clear that the detention was "in important respects indistinguishable from a traditional arrest" and therefore required probable cause or judicial authorization to be legal. Ibid. The same is, if anything, even clearer here.
 
 
 8
 Contrary reasons mentioned by the state courts are no answer to the facts. Kaupp's "`Okay'" in response to Pinkins's statement is no showing of consent under the circumstances. Pinkins offered Kaupp no choice, and a group of police officers rousing an adolescent out of bed in the middle of the night with the words "we need to go and talk" presents no option but "to go." There is no reason to think Kaupp's answer was anything more than "a mere submission to a claim of lawful authority." Royer, supra, at 497 (plurality opinion); see also Schneckloth v. Bustamonte, 412 U. S. 218, 226, 233-234 (1973). If reasonable doubt were possible on this point, the ensuing events would resolve it: removal from one's house in handcuffs on a January night with nothing on but underwear for a trip to a crime scene on the way to an interview room at law enforcement headquarters. Even "an initially consensual encounter . . . can be transformed into a seizure or detention within the meaning of the Fourth Amendment." INS v. Delgado, 466 U. S. 210, 215 (1984); see Hayes, supra, at 815-816 ("[A]t some point in the investigative process, police procedures can qualitatively and quantitatively be so intrusive with respect to a suspect's freedom of movement and privacy interests as to trigger the full protection of the Fourth and Fourteenth Amendments"). It cannot seriously be suggested that when the detectives began to question Kaupp, a reasonable person in his situation would have thought he was sitting in the interview room as a matter of choice, free to change his mind and go home to bed.
 
 
 9
 Nor is it significant, as the state court thought, that the sheriff's department "routinely" transported individuals, including Kaupp on one prior occasion, while handcuffed for safety of the officers, or that Kaupp "did not resist the use of handcuffs or act in a manner consistent with anything other than full cooperation." App. A to Pet. for Cert. 6. The test is an objective one, see, e.g., Chesternut, 486 U. S., at 574, and stressing the officers' motivation of selfprotection does not speak to how their actions would reasonably be understood. As for the lack of resistance, failure to struggle with a cohort of deputy sheriffs is not a waiver of Fourth Amendment protection, which does not require the perversity of resisting arrest or assaulting a police officer.
 
 
 10
 Since Kaupp was arrested before he was questioned, and because the state does not even claim that the sheriff's department had probable cause to detain him at that point, well-established precedent requires suppression of the confession unless that confession was "an act of free will [sufficient] to purge the primary taint of the unlawful invasion." Wong Sun v. United States, 371 U. S. 471, 486 (1963). Demonstrating such purgation is, of course, a function of circumstantial evidence, with the burden of persuasion on the state. See Brown, 422 U. S., at 604. Relevant considerations include observance of Miranda, "[t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct." 422 U. S., at 603-604 (footnotes and citation omitted).
 
 
 11
 The record before us shows that only one of these considerations, the giving of Miranda warnings, supports the state, and we held in Brown that "Miranda warnings, alone and per se, cannot always . . . break, for Fourth Amendment purposes, the causal connection between the illegality and the confession." 422 U. S., at 603 (emphasis in original); see also Taylor v. Alabama, 457 U. S. 687, 699 (1982) (O'CONNOR, J., dissenting) (noting that, although Miranda warnings are an important factor, "they are, standing alone, insufficient"). All other factors point the opposite way. There is no indication from the record that any substantial time passed between Kaupp's removal from his home in handcuffs and his confession after only 10 or 15 minutes of interrogation. In the interim, he remained in his partially clothed state in the physical custody of a number of officers, some of whom, at least, were conscious that they lacked probable cause to arrest. See Brown, supra, at 604-605. In fact, the state has not even alleged "any meaningful intervening event" between the illegal arrest and Kaupp's confession. Taylor, supra, at 691. Unless, on remand, the state can point to testimony undisclosed on the record before us, and weighty enough to carry the state's burden despite the clear force of the evidence shown here, the confession must be suppressed.
 
 
 12
 The judgment of the State Court of Appeals is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.
 
 
 13
 
 It is so ordered.
 
 
 
 
 Notes:
 
 
 [1]
 The detectives applied to the district attorney's office for a "pocket warrant," which they described as authority to take Kaupp into custody for questioning. App. 3 to App. D to Pet. for Cert. 6 (trial transcript). The detectives did not seek a conventional arrest warrant, as they did not believe they had probable cause for Kaupp's arrest. Seeibid. As the trial court later explained, the detectives had no evidence or motive to corroborate the brother's allegations of Kaupp's involvement, see App. C to Pet. for Cert. 2; the brother had previously failed three polygraph examinations, while, only two days earlier, Kaupp had voluntarily taken and passed one, in which he denied his involvement, see id., at 1-2.
 
 
 [2]
 We have, however, left open the possibility that, "under circumscribed procedures," a court might validly authorize a seizure on less than probable cause when the object is fingerprintingHayes, 470 U. S., at 817.
 
 
 [3]
 On the record before us, it is possible to debate whether the law enforcement officers were armed. The State Court of Appeals not only described them as armed but said specifically that Pinkins's weapon was visible, though not drawn, when he confronted Kaupp in the bedroom. See App. A to Pet. for Cert. 6. But at least one officer testified before the trial court that they went to Kaupp's house unarmed. See App. 3 to App. D to Pet. for Cert. 8 (trial transcript)