SUTTON, Circuit Judge,
dissenting.
As I see it, we need not address two difficult questions in this case — whether the initial encounter with Mr. Baldwin was a consensual one and whether in any event the officers had reasonable suspicion to stop him. Even if we assume that the initial stop was unjustified, the police independently discovered the key item of evidence about which the parties are quarreling, the gun, as a result of intervening causes — -Baldwin’s resistance and flight— both of which relieve the evidence of any taint from the allegedly unlawful search.
In Murray v. United States, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988), the Court explained that “evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality” does not fall within the exclusionary rule. Id. at 537. Balancing the “interest of society in deterring unlawful police conduct and the public interest in having juries receive all *686 probative evidence of a crime,” the independent-source doctrine permits the introduction of evidence obtained in the absence of any police misconduct. Id. (quoting Nix v. Williams, 467 U.S. 431, 443, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)). Without the doctrine, in point of fact, the police would be “in a worse position than they would have been in absent any error or violation.” Id. (quoting Nix, 467 U.S. at 443).
The “classic independent source situation,” we said in United States v. Leake, 95 F.3d 409 (6th Cir.1996), occurs when the independent source is “unrelated to and independent of the unconstitutional search.” Id. at 412. Unrelatedness under the independent-source rule, however, does not preclude “all evidence [as] ‘fruit of the poisonous tree’ simply because it would not have come to light but for the illegal actions of the police.” Wong Sun v. United States, 371 U.S. 471, 487-88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (emphasis added). “[T]he more apt question in such a case is ‘whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.’ ” Id.; see also United States v. Ceccolini, 435 U.S. 268, 276, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978) (declining to adopt a “but for” rule “that would make inadmissible any evidence, whether tangible or live-witness testimony, which somehow came to light through a chain of causation that began with an illegal arrest”).
In this case, any connection between the allegedly improper stop and the discovery of the weapon was attenuated, and indeed broken, by Baldwin’s independent actions. When an officer conducts a full-blown search or a Terry pat-down and the subject of the search breaks free from the grasp of the officer, officers generally pursue the individual, not to exploit the illegal arrest, but because the intervening act itself creates reasonable suspicion, if not a palpable risk of danger to officers and citizens in the area. As the Supreme Court explained in Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), “evasive behavior is a pertinent factor in determining reasonable suspicion” and “[h]eadlong flight ... is the consummate act of evasion.” Id. at 124 (holding that presence in a high-crime area and flight from police combined to create reasonable suspicion); see also Watkins v. City of Southfield, 221 F.3d 883, 889 n. 3 (6th Cir.2000) • (noting that the development of reasonable suspicion may take into account all events occurring prior to the physical apprehension of a suspect who flees); United States v. Garcia, 516 F.2d 318, 320 (9th Cir.1975) (finding no taint to evidence discovered after the defendant fled an illegal stop at an immigration checkpoint in his car and was subsequently stopped after a high-speed chase); United States v. Castillo, No. 99-5463, 2000 WL 1800481, at *5 (6th Cir. Nov. 28, 2000) (unpublished) (noting that “a defendant’s flight from the scene of an illegal Terry stop and his use of force against an officer dissipated the taint arising from the illegal seizure”).
When Baldwin broke free from Officer Coombs’ grasp after the officer placed his hand on Baldwin’s pocket and when he fled from the officers, he created the necessary reasonable suspicion to justify a stop. Because this second stop was prompted by Baldwin’s independent actions, was supported by reasonable suspicion and was not in any way an exploitation of the original stop, cf. Kaupp v. Texas, 538 U.S. 626, 633, 123 S.Ct. 1843,155 L.Ed.2d 814 (2003) (observing that the existence (or absence) of police misconduct is relevant to whether a subsequent confession should be suppressed as tainted), it provided an independent source for the admission of the *687 gun against Baldwin, untainted by any illegality of the original stop. To put the point another way, consider what would have happened if Baldwin had fled as soon as the officers came upon the scene. In that setting — (1) where officers had been called to a neighborhood in which shots had just been fired (2) in a high-crime area (3) late at night and (4) with a fleeing suspect — there can be little doubt after Wardlow that reasonable suspicion would exist. Why should this case be any different? The officers had the first three pieces of information before they arrived on the scene, and they obtained the last piece of information not because they did anything unusual in patting down Mr. Baldwin (or in otherwise exploiting the stop) but because Baldwin independently chose to bolt.
The majority’s approach, moreover, harms “the public interest in having juries receive all probative evidence of a crime,” Murray, 487 U.S. at 537, without offering any appreciable protection to criminal defendants. Consider: a police officer who, like Coombs, pats down a suspect after an illegal stop must now watch the suspect run off into the distance, without giving chase, fully knowing that the suspect is armed and quite possibly dangerous. That cannot be right. The exclusionary rule protects those who follow police direction after an illegal stop, not those who seek to escape out of a sense of panic or on their own suspicion that a police search is unsupported.
One other point: I cannot agree with the majority’s apparent reliance on the fact that the final apprehension of Baldwin “failed to reveal any evidence that was not already known to Coombs.” Maj. Op. at 11 (emphasis in original). Justice Holmes’s original use of the term “independent source” specifically applied “to that particular category of evidence acquired by an untainted search which is identical to the evidence unlawfully acquired.” Murray, 487 U.S. at 538 (emphasis in original); see Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1920) (Holmes, J.). The mere fact that the evidence at issue has once been discovered cannot insulate it from subsequent independent discovery.
I would reverse the suppression of the firearm and accordingly respectfully dissent from the majority’s contrary conclusion.