Filed 1/27/14  P. v. Rodriguez CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039238 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1095258) |
| v. | |
| GILDARDO RODRIGUEZ, | |
| Defendant and Appellant. | |

Defendant Gildardo Rodriguez pleaded no contest to attempted murder in exchange for a sentence of 12 years.  (§§ 664, subd. (a), 187.)[1]  He also admitted two enhancements:  personal infliction of great bodily injury, and that he committed the offense for the benefit of a criminal street gang.  (§§ 12022.7, subd. (a), 186.22, subd. (b)(l)(C).)  Defendant moved to withdraw his plea before he was sentenced.  The trial court denied his motion and sentenced him to the negotiated term of 12 years.

Defendant appeals from the denial of his motion to withdraw his plea.[2]  He also claims his sentence was disproportionate to his offense, and he raises several claims of ineffective assistance of counsel.  We find defendant's claims without merit, and we will affirm the judgment.

---

[1] All undesignated statutory references are to the Penal Code.

[2] The trial court granted defendant's request for a certificate of probable cause.

# I. FACTUAL AND PROCEDURAL BACKGROUND

A. *Facts of the Offense*

On the evening of May 7, 2010, the victim, Steven Johnson, was in San José visiting with his girlfriend. After they parked at her apartment complex, a group of about five persons, including defendant, spotted the couple walking away from their van. One of the five, a Sureño gang member known as "Lil Shadow," asked Johnson, "Do you bang?" Johnson, unaware he was in a Sureño-dominated neighborhood, responded, "Norte." Lil Shadow responded, "Fuck Norte."

Johnson ran away, and the group of five, including defendant, ran after him. Johnson tripped, struck a car, and fell to the ground, whereupon the group beat him and kicked him. Defendant, by his own admission, kicked Johnson in the head at least twice. Defendant heard the other attackers say "Fuck Norte" as they were hitting Johnson. After about 30 seconds, defendant heard a car honk, and he left the scene, while others remained behind. As he was running away, defendant saw one of the other attackers thrusting towards the victim. Defendant later testified he had seen Lil Shadow with a knife.

Johnson suffered several lacerations to his head, a laceration to each forearm, a stab wound to his thigh, and nine stab wounds to his back. One of his kidneys had been cut, and he suffered bleeding around his lungs.

Based on a witness's tip, police went to defendant's family home at around 2:00 a.m. the morning after the attack. About six or seven armed officers entered and searched the apartment. Four or five officers found defendant asleep in his bedroom and took him outside for questioning. Defendant was barefoot and dressed in his pajamas, but he was not handcuffed. Police told him he was not under arrest. Police kept defendant's family members in the living room and told them not to move. Defendant was not allowed to speak with his parents.

2

When he was questioned outside the apartment, defendant admitted he was involved in the attack, and he admitted kicking the victim in the head. At that point, police formally arrested defendant and advised him of his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*). Defendant said he understood his rights and continued to talk to police. He then reaffirmed that he had attacked the victim. Police recorded defendant's statements, but the record contains no transcript of the recordings.

Police then took defendant to the Juvenile Pre-Processing Center at the San José Police Department. After booking defendant, police again advised him of his *Miranda* rights, and he agreed to talk to them. Defendant again admitted to the facts of his involvement. He admitted that the other attackers were members of a Sureño gang, and he handwrote a note of apology.

B. *Pretrial Proceedings and Defendant's Motion to Withdraw His Plea*

Although defendant was a minor at the time of the offense,[3] the court found him not fit for juvenile court under Welfare and Institutions Code section 707(c). The prosecutor charged defendant with attempted murder. (§§ 187, 664, subd. (a).) The complaint further alleged defendant personally inflicted great bodily injury and that he committed the offense for the benefit of, at the direction of, or in association with, a criminal street gang. (§§ 187, 12022.7, subd. (a), 1203, subd. (e)(3), 186.22, subd. (b)(l)(C).) Based on the charge and the enhancement allegations in the complaint, defendant faced a maximum sentence of 22 years.

At the preliminary hearing, the prosecutor offered a plea settlement for a term of 15 years, but defendant rejected the offer. The court, finding the evidence sufficient to support the complaint, held defendant to answer. The prosecutor charged defendant by information identical to the complaint in all relevant respects.

---

[3] Defendant was 17 years old when the incident occurred.

3

Defendant changed his plea on September 26, 2011, the day the case was set for trial. He pleaded no contest to attempted murder and admitted the enhancement allegations in exchange for a term of 12 years, consisting of the aggravated term of nine years for attempted murder plus three years for infliction of great bodily injury. The parties agreed the additional 10-year gang enhancement penalty would be stricken.

At the plea hearing, the court fully admonished defendant about his rights and the terms of the plea agreement. Defendant personally stated that he understood his rights and that his plea was free and voluntary. He also waived his right to appeal. The prosecutor and counsel for defendant stipulated to a factual basis for the plea based on the police reports and the transcript of the preliminary hearing. The court found defendant fully informed of his rights, and the court found he knowingly, intelligently, freely, and voluntarily waived his rights.

On March 2, 2012, before sentencing, defendant substituted new counsel and moved to withdraw his plea under section 1018. He argued that his prior attorney, Cary Lindstrom, provided ineffective assistance of counsel and failed to inform him of potentially meritorious defenses. Defendant, his mother, and his sister all testified at a hearing as to their interactions with Mr. Lindstrom, the circumstances of the police search, and defendant's interrogation.

Regarding the police search of the home, defendant, his mother, and his sister all testified that the police did not have a warrant. Defendant's mother gave conflicting testimony about whether she or anyone else consented to the search of their home. Initially, she testified that she gave permission to the police to enter the apartment. She then testified that her husband had opened the door, and that police pushed him out of the way before entering. She stated that police entered the home without permission. On cross examination, she testified that they gave permission to the police, but she added that she never personally spoke to the police and that "they just came in." She again stated

4

that it was her husband who opened the door, and that the police "just came in" without permission.

Defendant, his mother, and his sister all testified that Lindstrom told them the case would be easier and defendant would get out of custody sooner if he were prosecuted as an adult rather than a juvenile. Defendant's mother gave conflicting testimony about whether she ever discussed the circumstances of the police search with Lindstrom. First, she testified that she never discussed the police entry with Lindstrom, and he never asked her about it. On cross examination, however, she testified that she told Lindstrom about how police entered the apartment.

In describing defendant's demeanor at the plea hearing, defendant's mother testified that he was emotionally upset and crying before he entered his plea. She said he appeared indecisive, desperate, and under pressure to enter the plea. She testified that a bailiff told defendant it was time for him to make a decision. Defendant's sister gave similar testimony describing defendant as upset and not wanting to enter the plea.

Defendant testified that he did not feel prepared for trial. He testified that Lindstrom had not adequately discussed the case with him and had not given him copies of the police reports or the transcript of the preliminary hearing. He testified that at the time of his plea, he wanted to seek a continuance to give him more time to study the evidence, but he was pressured into pleading no contest. When cross examined about the waivers and admissions he made in his plea colloquy, defendant denied that his answers to the court were truthful. He also testified concerning his decision to accept the plea agreement. He conceded that he did so because he was concerned he would lose at trial, and he believed the offer from the prosecutor was the lowest sentence he could achieve otherwise.

Lindstrom testified for the prosecution and signed a declaration in support of the prosecution's opposition to the motion to withdraw. He denied telling defendant or the family that the case would be easier if defendant were prosecuted as an adult. Lindstrom

5

testified that he reviewed the police reports with defendant, but he could not recall giving any copies to defendant. Lindstrom admitted he had a policy of not giving police reports to clients in custody because other inmates would see them. Lindstrom testified that he explained any possible defenses to defendant on multiple occasions.

Lindstrom conceded that he did not file any motions or discovery requests. He did not hire an investigator or do any investigation. He never attempted to interview the victim, even though the victim was in custody and available to him. Although the case was set to go to trial on the day defendant entered his plea, Lindstrom had filed no motions in limine, and the record shows no opposition or reply to the prosecutor's motions in limine.

Lindstrom gave equivocal statements about whether he interviewed the family to determine whether the search of defendant's home was consensual. Lindstrom's declaration stated, "In discussions with Gi[l]dardo Rodriguez's family they never stated there was any forced entry into the home." At the hearing, he testified that he discussed the possibility of filing a pretrial motion with the family, but the family never told him the police entry was nonconsensual. On cross examination, however, Lindstrom admitted that he never did any investigation with the family concerning the police entry.

Lindstrom's declaration stated that he had listened to the police recordings of defendant's statements. However, at the hearing, Lindstrom could not recall whether there were any such recordings until the prosecutor refreshed Lindstrom's recollection of his declaration, whereupon he testified that he had listened to the recordings.

Lindstrom testified that after the preliminary hearing, the prosecution provided him with an email from a physician who had examined the victim's injuries. The physician told the prosecutor he could not testify with any certainty that the injuries to the victim's head were "kick-specific," and were equally likely to have been caused by the victim's head hitting the curb. Lindstrom testified that the issue of great bodily injury had thereby been resolved in defendant's favor. Furthermore, the prosecutor told

6

Lindstrom that, in all likelihood, the prosecutor would dismiss that allegation. Lindstrom testified that he informed defendant of this development but the parties nonetheless used the allegation as a way "to get to a certain number" in negotiating a disposition. Lindstrom also admitted that the allegation of great bodily injury was a factor that resulted in defendant's case being transferred to adult court.

Lindstrom disputed that defendant was emotionally upset prior to entering his plea. He did not recall defendant crying at the hearing, and instead described defendant's demeanor as "resolved." At one point, defendant told Lindstrom, "Yeah, I'm ready to do this. Let's do this." Lindstrom believed that most of the anxiety concerning the plea originated with defendant's family, not defendant himself. Lindstrom testified that defendant had come to understand the seriousness of the charges. Lindstrom had explained to him the weakness of their defense given the strength of the evidence and defendant's own admissions to police.

At the conclusion of a hearing on December 19, 2012, the trial court found no ineffective assistance of counsel by Lindstrom, but the court did not address any specific alleged failures such as the failure to conduct investigation or file any motions. As to the entry of plea, the court found defendant did so voluntarily, knowingly, intelligently, and without undue pressure from the court or any party. Accordingly, the court denied defendant's motion to withdraw his plea, and sentenced him to a term of 12 years in accord with the terms of the plea agreement.

## II. DISCUSSION

Defendant raises three categories of claims on appeal. First, he contends the trial court erred in denying his motion to withdraw his plea because he did not knowingly and intelligently enter the plea. Second, he claims his sentence is disproportionate to his crime in violation of the California Constitution. Finally, he raises several claims of ineffective assistance of counsel.

7

A. *Standard of Review*

A denial of a motion to withdraw a guilty or no contest plea rests in the sound discretion of the trial court and is final unless the defendant can show a clear abuse of discretion. (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254.) A reviewing court must adopt the trial court's factual findings if substantial evidence supports them. (*Ibid.*)

"To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. [Citations.] Counsel's performance was deficient if the representation fell below an objective standard of reasonableness under prevailing professional norms. [Citation.] Prejudice exists where there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." (*People v. Benavides* (2005) 35 Cal.4th 69, 92-93, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 693-694 (*Strickland*).) " 'Finally, prejudice must be affirmatively proved; the record must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." ' " (*Id.* at p. 624.) "It is the defendant's burden on appeal [. . .] to show that he or she was denied effective assistance of counsel and is entitled to relief. [Citations.] '[T]he burden of proof that the defendant must meet in order to establish his [or her] entitlement to relief on an ineffective-assistance claim is preponderance of the evidence.' [Citation.]" (*In re Hill* (2011) 198 Cal.App.4th 1008, 1016.)

B. *The Denial of Defendant's Motion to Withdraw His Plea*

Under state law, a defendant may move the trial court to set aside a guilty plea for "good cause" at any time before the entry of judgment. (§ 1018.) "Good cause" means mistake, ignorance, fraud, duress or any other factor that overcomes the exercise of free judgment and must be shown by clear and convincing evidence. (*People v. Ravaux* (2006) 142 Cal.App.4th 914, 917.) The standard for determining the validity of a guilty

8

plea is set forth in *Boykin v. Alabama* (1969) 395 U.S. 238. A defendant must be informed of his rights and he must be given an opportunity to make an intelligent choice to plead guilty. (*In re Ibarra* (1983) 34 Cal.3d. 277 [overruled on other grounds in *People v. Howard* (1992) 1 Cal.4th 1132].) Before a defendant may enter a plea of guilty, he must knowingly and intelligently waive certain constitutional rights: the privilege against self incrimination, the right to trial by jury, and the right to confront his accusers. (*Boykin v. Alabama, supra,* at p. 243.) Furthermore, "the record must contain on its face direct evidence that the accused was aware, or made aware, of his right to confrontation, to a jury trial, and against self-incrimination, as well as the nature of the charge and the consequences of his plea." (*In re Tahl* (1969) 1 Cal.3d 122, 132 [disavowed on other grounds].)

Defendant argues that his plea was not knowing and intelligent because he was emotionally unstable and under duress when he entered it. Defendant's mother and sister testified that he was crying and emotionally upset at the plea hearing. Lindstrom testified to the contrary, stating that defendant was "resolved" and made the decision knowing the seriousness of the charges and the risk of losing at trial. At the hearing on the motion to withdraw, defendant testified that he understood the charges and allegations against him. He admitted again to the facts of his involvement in the attack. But when the prosecutor questioned him as to whether the evidence was thereby sufficient to support the charged offense, defendant testified that he did not believe the evidence supported a charge of attempted murder, and that Lindstrom had never explained the theory of aiding and abetting to him. However, Lindstrom testified that he explained the theories of liability to defendant, and Lindstrom believed that defendant eventually came to understand his liability. Furthermore, defendant admitted that he accepted the plea agreement because he was concerned about the consequences of a verdict against him, and he believed the offer was the lowest sentence he could achieve. This testimony constitutes substantial evidence for the trial court's finding that defendant's plea was knowing and intelligent.

9

Defendant also contends he did not want to enter into the plea, and that he did so because of coercion by his attorney. Lindstrom agreed that he advised defendant to accept the plea offer. However, "[t]he fact that [defendant] may have been persuaded, or was reluctant, to accept the plea is not sufficient to warrant the plea being withdrawn." (*People v. Ravaux, supra,* 142 Cal.App.4th at p. 919.) "Guilty pleas resulting from a bargain should not be set aside lightly and finality of proceedings should be encouraged." (*People v. Hunt* (1985) 174 Cal.App.3d 95, 103.)

Finally, defendant asserts that Lindstrom failed to inform him of the email from the expert physician stating he could not testify with certainty that the victim's injuries were caused by defendant's kicks to the head. Although defendant testified that Lindstrom had given him a stack of documents about an inch thick, defendant could not recall exactly what was included in these documents. Lindstrom, however, testified that he informed defendant of the likelihood the prosecutor would dismiss the great bodily injury allegation based on the email from the doctor. This constitutes substantial evidence to support a finding that defendant was aware of these circumstances at the time of his plea.

Accordingly, we find no abuse of discretion by the trial court in denying defendant's motion to withdraw his plea.

C. *Proportionality of the Sentence*

Defendant contends his sentence is disproportionate to his offense in violation of the California Constitution. He argues that his participation in the attack on the victim was limited to kicking the victim twice in the head, which did not result in "serious injuries," whereas another person inflicted the knife wounds. The Attorney General contends defendant waived this claim on appeal under the terms of his plea agreement.

The record shows that defendant expressly waived his appellate rights under the terms of his plea agreement after the trial court admonished him as to his right to appeal and questioned him as to his understanding of it. Having rejected defendant's challenge

to the validity of his plea, we must enforce its terms. (*People v. Panizzon* (1996) 13 Cal.4th 68, 84 [waiver of right to appeal on basis of disproportionate sentence found enforceable where defendant entered it knowingly, intelligently, and voluntarily].) Furthermore, defendant's acceptance of the plea arrangement constituted an implicit waiver of his appeal on this ground. " 'When a defendant maintains that the trial court's sentence violates rules which would have required the imposition of a more lenient sentence, yet the defendant avoided a potentially harsher sentence by entering into the plea bargain, it may be implied that the defendant waived any rights under such rules by choosing to accept the plea bargain.' " (*People v. Hester* (2000) 22 Cal.4th 290, 295 [quoting *People v. Couch* (1996) 48 Cal.App.4th 1053, 1057].) Accordingly, we find defendant has waived appellate review of his claim that he received a disproportionate sentence.

D. *Ineffective Assistance of Counsel*

Defendant raises numerous claims of ineffective assistance of counsel by Lindstrom. The Attorney General characterizes Lindstrom's conduct as tactically motivated and contends his representation was reasonable. We agree with defendant that Lindstrom's representation fell below professional standards in some respects, but on the record before us, defendant does not show a reasonable likelihood he would have obtained a more favorable outcome absent counsel's deficiencies.

Generally, defendant alleges Lindstrom failed to investigate the facts of the offense and present a viable defense. Specifically, defendant claims Lindstrom (1) failed to challenge the allegations of great bodily injury and that the offense was committed for the benefit of a criminal street gang, resulting in his case being transferred to adult court, (2) failed to investigate the facts of the search and to file a motion to suppress based on the unlawful police entry into his home and the circumstances of his interrogation, (3) failed to file a motion to dismiss under section 995, (4) failed to seek discovery with respect to his alleged gang membership, (5) failed to seek discovery showing the victim

11

was a gang member, and (6) stipulated to the testimony of a gang expert at the preliminary hearing. Most of these claims are not supported by evidence in the record. But several of defendant's complaints regarding the deficiency of Lindstrom's representation have merit.

First, Lindstrom admitted he did no investigation of the facts and circumstances of the alleged offense, filed no motions, and made no discovery requests. He also did not interview defendant's family members regarding the police entry into the apartment and, more critically, the record indicates he never attempted to interview defendant's mother's husband, who initially answered the door when police knocked. Lindstrom claimed he reviewed the police reports with defendant with respect to the police entry, but defendant was asleep upstairs when the police entered his home, so defendant likely would not have known whether their entry was consensual.

Second, Lindstrom admitted he made no attempt to interview the victim or any other witness, even though Lindstrom conceded that the victim was in custody and available to him. Lindstrom claimed the victim's testimony at the preliminary examination was helpful, and therefore there was no need to interview him. But the preliminary hearing occurred long after defendant was found not fit for juvenile court, and Lindstrom did no investigation and filed no motions attempting to keep defendant in juvenile court. Conducting a basic investigation, such as attempting to interview the victim, might have yielded evidence that defendant was not responsible for the serious injuries suffered by the victim—evidence that counsel discovered only *after* defendant was removed from juvenile proceedings. Lindstrom admitted that the allegation of great bodily injury was a factor in the hearing to determine whether defendant's case should be transferred to adult court, yet he made no attempt to investigate the facts of those injuries or his client's role in causing them.

Lindstrom's failure to investigate any of the facts and circumstances of the offense constituted deficient performance. "Criminal defense counsel has the duty to investigate

12

carefully all defenses of fact and of law that may be available to the defendant." (*In re Hill* (2011) 198 Cal.App.4th 1008, 1016.) "[A] defense attorney who fails to investigate potentially exculpatory evidence […] renders deficient representation." (*In re Edward S.* (2009) 173 Cal.App.4th 387, 407.) "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." (*Strickland, supra,* 466 U.S. at p. 691.)

Here, there was no reasonable or tactical explanation for counsel's failure to conduct a basic investigation. Although Lindstrom testified that he saw no basis for filing motions or a written opposition to the fitness determination, he could not have made a reasonable decision about whether to do so without first investigating the relevant facts. A defendant "can reasonably expect that in the course of representation his counsel will undertake only those actions that a reasonably competent attorney would undertake. But he can also reasonably expect that *before counsel undertakes to act at all he will make a rational and informed decision on strategy and tactics founded on adequate investigation and preparation.*" (*People v. Ledesma* (1987) 43 Cal.3d 171, 215.) (Italics added.) Based on the facts in the record, a reasonably competent attorney would have conducted some investigation to determine whether grounds existed for suppression of defendant's statements or other evidence. This is particularly important when a defendant faces charges as serious as the attempted murder charges defendant faced here. (*In re Hill*, *supra*, 198 Cal.App.4th at p. 1017) ["[W]e must consider the seriousness of the charges against the defendant in assessing counsel's performance."].)

For example, defendant faced a three-year enhancement for personally inflicting great bodily injury on the victim, but Lindstrom conducted no independent investigation to determine the extent to which defendant in fact was responsible for inflicting injuries to the victim's head. The record, including an email produced by the prosecutor from an expert physician expressing doubt about whether the victim's injuries to the head were

13

caused by defendant, suggests defendant may not have personally inflicted great bodily injury on the victim. Counsel offered no explanation or justification for his failure to investigate these facts independently or at an earlier stage of the proceedings.

Second, Lindstrom made no motion to suppress defendant's statements to the police, and the record does not suggest any tactical justification for the failure to do so. As Lindstrom acknowledged, defendant's own statements constituted the strongest evidence against him. The record holds no statements from any eyewitnesses to his involvement in the attack. At the preliminary hearing, the victim testified that he could not identify any of his attackers. The victim's girlfriend testified that she could identify Lil Shadow, but she could not identify any of the other attackers. Nor does the record contain any forensic evidence connecting defendant to the offense. Defendant's statements are the only evidence of his involvement in the attack found in the record.

The record shows a motion to suppress some or all of defendant's statements to the police would not have been frivolous. First, had Lindstrom been able to show the police entry into the apartment was nonconsensual, or that the police detained defendant without probable cause or reasonable suspicion, at least some portion of defendant's statements may have been suppressed under *Kaupp v. Texas* (2003) 538 U.S. 626, 632 (per curiam) (illegal detention under Fourth Amendment requires exclusion of subsequent statement given after *Miranda* warnings unless the confession was an act of free will sufficient to purge the taint of the unlawful invasion). There is no dispute that police entered defendant's home without a warrant. The evidence holds conflicting evidence as to whether the police had consent to enter, but even if they did, it is not clear they had probable cause or reasonable suspicion to detain defendant. At the preliminary hearing, the testifying officer stated only that police had "developed information" about defendant prior to searching his apartment. A police report states only that a neighbor saw defendant standing in the park when Lil Shadow came to her door seeking shelter. We cannot determine from this record whether police had sufficient probable cause or

14

reasonable suspicion to detain defendant for questioning, but a competent and diligent defense attorney would have sought to investigate these facts.

As to whether defendant was detained or in custody at the time of his questioning, he was awakened by four or five police officers in his bedroom at around 2:00 a.m., and he was taken outside the apartment in his bare feet and pajamas while his family members were detained inside. A reasonable person in these circumstances would not have felt free "to disregard the police and go about his business." (*California v. Hodari D.* (1991) 499 U.S. 621, 628.) We think these circumstances, especially because defendant was a minor, suggest defendant was detained for purposes of the Fourth Amendment, and that he was in custody for purposes of the Fifth Amendment. (*United States v. Mendenhall* (1980) 446 U.S. 544, 554 [a person has been "seized" within the meaning of the Fourth Amendment if a reasonable person would have believed that he was not free to leave]; *People v. Arnold* (1967) 66 Cal.2d 438, 448 ["[C]ustody occurs if the suspect is physically deprived of his freedom of action in any significant way or is led to believe, as a reasonable person, that he is so deprived."] [disapproved on other grounds in *Walker v. Superior Court* (1988) 47 Cal.3d 112, 123]; *People v. Lewis* (2001) 26 Cal.4th 334, 383 ["To determine whether a minor's confession is voluntary, a court must look at the totality of circumstances, including the minor's age, intelligence, education, experience, and capacity to understand the meaning and consequences of the given statement."].) Furthermore, according to police testimony, defendant admitted his involvement in the attack before he was admonished under *Miranda*. A motion to exclude the pre-*Mirandized* portion of defendant's statements would not have been frivolous, and a motion to exclude defendant's statements made *after* he was given his *Miranda* warnings could also have been made.[4]

---

[4] The United States Supreme Court in *Missouri v. Seibert* (2004) 542 U.S. 600 (*Seibert*), for example, suppressed a defendant's postwarning statement when police first

(*Cont*.)

Even if a motion to suppress should have been made, defendant has not shown a reasonable probability that he would have obtained a more favorable outcome as a result. The record does not sufficiently set forth the facts and circumstances of the interrogations and detention of defendant.[5] For example, it is not clear what police said to defendant prior to taking him outside the apartment, and what caused defendant to make inculpatory statements before the police gave him a *Miranda* warning. (See *Rhode Island v. Innis* (1980) 446 U.S. 291, 301 ["interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions that the police should know are reasonably likely to elicit an incriminating response].) It is not clear what defendant told police immediately after his formal arrest and initial *Miranda* warning. Nor can we determine the extent to which defendant's postwarning statements were mere repetitions of his initial, unwarned statement, or to what extent he may have provided additional detail. Finally, defendant points to nothing to show that his post-*Mirandized* statements should be suppressed under *Seibert*. Accordingly, the record here does not show that a motion to suppress would have yielded a reasonable probability of a more favorable outcome absent counsel's deficient conduct. Because, under *Strickland*, the burden is on defendant to demonstrate prejudice, we find that defendant has not shown ineffective assistance of counsel arising out of the failure to file a motion to suppress.[6] (*In re Hill*, *supra*, 198 Cal.App.4th 1008.)

Defendant also complains of Lindstrom's failure to seek dismissal under section 995. Based on Lindstrom's testimony, it is likely he could have moved for dismissal of

deliberately elicited a confession before providing the defendant with a *Miranda* warning, then warned the defendant and conducted the interrogation anew.

[5] Critical to this analysis would be the recordings of defendant's statements, which neither party has made part of the record.

[6] Based on the incomplete nature of the record concerning these circumstances, a writ of habeas corpus would be a more appropriate forum for adjudication of these claims.

the great bodily injury allegation, but it is also clear he made a tactical decision not to do so in the interest of obtaining a more favorable settlement. [7] "Reviewing courts will reverse convictions on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission." (*People v. Fosselman* (1983) 33 Cal.3d 572, 581.) We do not second-guess the wisdom of counsel's tactical choice in this regard. Moreover, while it is hypothetically possible defendant would have enjoyed a stronger bargaining position had counsel obtained dismissal of the great bodily injury allegation at an earlier stage in the proceedings, the facts in the record do not demonstrate that such an outcome was reasonably probable.

Defendant further complains of Lindstrom's conduct with respect to evidence of defendant's gang membership. Defendant contends he is not a gang member, and he complains of Lindstrom's stipulation to the gang expert testimony at the preliminary hearing in which the expert opined defendant was a gang member. However, whether defendant was a gang member was not a matter of great import with respect to the charges against him. Defendant need not be a gang member to be liable for the enhancement under section 186.22, subdivision (b)(l)(C) (applying to "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang member [. . . .]".) Defendant does not dispute that he participated in the attack "for the benefit of" or "in association with" a group of Sureño gang members. Nor does he dispute that attacking a Norteño gang member in territory dominated by a Sureño gang amounted to "promot[ing], further[ing], or assist[ing]" the

---

[7] Regarding Lindstrom's testimony to the effect that the enhancement for great bodily injury was nothing more than a bargaining chip in settlement negotiations, we find counsel's statements troubling. While we are aware of the realities of plea bargaining, no attorney may advise his client to admit an allegation having no basis in fact.

17

latter gang's criminal conduct. In light of these facts, it is not reasonably probable that the issue of defendant's membership in the gang would have affected the outcome of the proceedings.

Finally, regarding the issue of prejudice generally, much of the evidence against defendant pertaining to the charge of attempted murder and the alleged gang enhancement was not in dispute. Absent a successful motion to suppress his statements, it is not reasonably probable that defendant would have enjoyed a more favorable outcome had counsel employed the various tactics defendant now contends he should have undertaken. For example, defendant has not shown that competent investigation or other more diligent efforts by counsel could have overcome the evidentiary hurdles he faced. Defendant admitted to the police that he kicked the victim at least twice in the head. While defendant denies that he was a gang member, he admitted that he attacked the victim in concert with Sureño gang members after the victim revealed he was a member of a rival Norteño gang. It is not reasonably likely that a jury would have ignored or overlooked such evidence in assessing the charges against defendant. Given the possibility of a 10-year gang enhancement penalty, and defendant's undisputed cooperation with gang members in mounting the attack, it is not reasonably probable defense counsel could have obtained a more favorable plea bargain absent his deficient conduct. While a successful motion to suppress defendant's statements might have shifted the balance of the evidence in defendant's favor, for the reasons above, we find defendant has not demonstrated a reasonable probability that such a motion would have been successful.

In sum, given the state of the evidence in the record, defendant has not shown a reasonable probability that defense counsel, absent deficient conduct, could have obtained a more favorable outcome. Accordingly, defendant has failed to establish prejudice under the *Strickland* standard. We therefore find defendant's claims of ineffective assistance of counsel without merit.

### III. DISPOSITION

The judgment is affirmed.

_____

Márquez, J.

WE CONCUR:

_____

Rushing, P. J.

_____

Premo, J.