**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Craig Allen HIPP, Defendant–Appellant.**

No. 15–12415
Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

March 1, 2016.

Stephen Carlton, Ellen L. Cohen, U.S. Attorney's Office, West Palm Beach, FL, Daniel Matzkin, Wifredo A. Ferrer, Emily M. Smachetti, U.S. Attorney's Office, Miami, FL, for Plaintiff–Appellee.

Edward G. Salantrie, Jr., Edward G. Salantrie, PLLC, Fort Lauderdale, FL, for Defendant–Appellant.

Before WILLIAM PRYOR, ROSENBAUM, and FAY, Circuit Judges.

PER CURIAM:

After a jury trial, Craig Allen Hipp was convicted of mail fraud, in violation of 18 U.S.C. § 1341; wire fraud, in violation of 18 U.S.C. § 1343; and conspiracy to commit wire and mail fraud, in violation of 18 U.S.C. § 1349. Hipp challenges his convictions on two grounds: (1) the district court erred in denying his motion to suppress incriminating, pre-arrest statements Hipp made to Federal Bureau of Investigation (FBI) agents; and (2) the prosecutor committed misconduct during closing argument and deprived Hipp of a fair trial. After careful review of the record and the briefs, we affirm.

## I.

In May 2014, a federal grand jury returned a 34–count indictment against Hipp and three codefendants, Joseph Signore, Laura Signore, and Paul Schumack II, in connection with their roles in the fraudulent activities of JCS Enterprises Services, Inc. ("JCS"). In essence, the indictment alleged that JCS operated a $70,000,000 Ponzi scheme.[1]

According to the indictment, JCS solicited investors to purchase "virtual concierge machines" ("VCMs")—stand-alone computer kiosks with monitor displays that allowed users to, among other things, view advertisements, purchase products, and print retail coupons—for $3000 or $3,500. JCS promised to install and maintain the VCMs at various locations in the United States, in order to earn advertising and other revenue to pay the investors. JCS claimed that the investment would earn a monthly return of $300 per machine for 36 months through advertising revenue and transaction fees. Of the more than 26,000 VCMs sold, however, fewer than 500 ever were operational. Promised investor returns were satisfied, if at all, not from advertising revenue, but from money from new investors.

Hipp was JCS's President of Manufacturing and Operations. He was in charge of manufacturing the VCMs, and he also signed investor contracts on behalf of JCS. The indictment charged Hipp with one count each of mail fraud, wire fraud, and conspiracy to commit mail fraud and wire fraud. Hipp pled not guilty to all counts.

Before trial, Hipp moved to suppress certain inculpatory statements he made during a pre-arrest interview with FBI agents at his home on April 4, 2014. He contended that his statements were not voluntary because FBI agents allegedly extracted the information from him via promises of leniency, inducements, deceptions, and threats of arrest. The district court held a suppression hearing and heard testimony from both Hipp and the FBI agent who interviewed him. At the conclusion of the hearing, the district court denied Hipp's motion to suppress, finding that his statements to the FBI were voluntary. The court discredited Hipp's testimony that he had been threatened with arrest, and it highlighted that Hipp was an intelligent adult who invited the agents into his home to talk.

The case went to trial and was presented to a jury over nine days. The government called eighteen witnesses to testify about the scheme. Hipp's main defense was that he knew nothing about the fraud that JCS perpetrated on its investors.

During closing argument, the prosecutor made two statements Hipp claims warrant a new trial. First, the prosecutor said that "this is a case as blatant as you will ever get in a court of law of outright fraud." Second, the prosecutor asserted that Hipp "tried to obstruct the grand jury investigation." Hipp objected to both comments and later moved for a mistrial.

After hearing argument from the parties outside the jury's presence, the district court denied the motion for a mistrial. The court determined that the prosecutor's first comment, while improper, was not substantially prejudicial. As for the second comment, the court determined that it was proper argument because it was based on evidence presented at trial—that Hipp was involved in fabricating a back-dated

---

1. "A Ponzi scheme uses the principal investments of newer investors, who are promised large returns, to pay older investors what appear to be high returns, but which are in reality a return of their own principal or that of other investors." *Wiand v. Lee,* 753 F.3d 1194, 1201 (11th Cir.2014).

email in response to a grand-jury subpoena demanding JCS's records—and was highly relevant to Hipp's participation in a criminal conspiracy. The jury found Hipp guilty on all counts. The district court sentenced Hipp to 84 months of imprisonment. Hipp now appeals.

## II.

Hipp argues first that the district court erred in failing to suppress the pre-arrest statements that he made during an interview with the FBI because the statements were not voluntarily made. According to Hipp, the agents deliberately misled him into believing that it would be beneficial for him to answer their questions and detrimental to his liberty to refuse.

In an appeal from the denial of a motion to suppress, we review the district court's factual findings for clear error and its application of the law to those facts *de novo*. *United States v. Holt*, 777 F.3d 1234, 1255 (11th Cir.2015). We construe all facts in the light most favorable to the party prevailing below, and we afford "substantial deference" to the district court's credibility determinations. *Id.* "We accept the factfinder's choice of whom to believe unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *Id.* at 1255–56 (internal quotation marks omitted).

"The Fifth Amendment prohibits the use of an involuntary confession against a defendant in a criminal trial." *United States v. Thompson*, 422 F.3d 1285, 1295 (11th Cir.2005). A voluntary statement is one that has not been coerced by government agents. *Id.* at 1296. Thus, our inquiry into voluntariness focuses on whether the defendant's statement or confession "was the product of a free and deliberate choice rather than intimidation, coercion or deception." *Id.*; *see Hutto v. Ross*, 429 U.S. 28, 30, 97 S.Ct. 202, 203–04, 50 L.Ed.2d 194 (1976) ("The test is whether the confession was extracted by any sort of threats or violence, (or) obtained by any direct or implied promises, however slight, (or) by the exertion of any improper influence.") (internal quotation marks omitted); *United States v. Ballard*, 586 F.2d 1060, 1063 (5th Cir.1978) ("[A]s long as the statement results from an informed and intelligent appraisal of the risks involved rather than a coercive atmosphere, the statement may be considered to have been voluntarily made.").[2] Sufficiently coercive conduct can take many forms, but paradigmatic examples include subjecting an accused to exhaustingly long interrogations, threatening or actually using physical force, or making promises that induce a confession. *Thompson*, 422 F.3d at 1295–96. Voluntariness is examined under the totality of the circumstances and on a case-by-case basis. *United States v. Castaneda–Castaneda*, 729 F.2d 1360, 1362 (11th Cir.1984).

At the suppression hearing, the district court heard testimony from Waldo Longa, an FBI agent, and Hipp. This testimony, in the light most favorable to the government, demonstrates the following facts. Two FBI agents, Longa and Paul Wackes, went to Hipp's residence on the morning of April 4, 2014.[3] Longa and Wackes iden-

2. This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*).

3. There is no dispute that the agents were permitted to approach Hipp's home and attempt to ask him questions about his involvement with JCS. *See United States v. Walker*, 799 F.3d 1361, 1363 (11th Cir.2015) (police officers may approach a home, just as any other private citizen may do, to "knock and talk" with the home's occupants).

tified themselves to Hipp as FBI agents and told him that they were investigating JCS. Hipp understandably was shocked to have FBI agents at his door early in the morning, and, seeing this, Longa told Hipp to settle down and reassured him that they were not there to arrest him. Hipp was not a target of the investigation at the time, although Longa knew that Hipp potentially faced criminal charges for his involvement with JCS. Neither agent was displaying a weapon.

While standing outside the residence, Longa told Hipp, "we need to talk," and stated that Hipp needed to hear them out. Longa offered to speak with Hipp at a place of his choosing, whether on the porch, inside Hipp's house, at the U.S. Attorney's Office, or somewhere else. Hipp invited the agents inside to talk because, according to his own testimony, he believed he had nothing to hide.

Inside, Longa told Hipp that they were there to solicit his cooperation in the investigation and to get at the truth. At Hipp's dining room table, Longa explained what he knew about JCS and asked Hipp questions about JCS's activities. Over the course of the conversation, which lasted between thirty minutes and one hour, Longa several times stated some variation on the same theme that it would probably be in Hipp's best interest to cooperate, tell the truth, and possibly become a witness for the government. Also during the conversation, Longa advised Hipp to speak with a lawyer. According to Longa, he did not display anger toward Hipp and did not make any promises or threats. At some point during the conversation, Longa served Hipp with a grand-jury subpoena. The conversation ended cordially.

■ The district court did not err in denying Hipp's motion to suppress. In view of the totality of the circumstances and the district court's credibility determinations, Hipp's statements were voluntary. Hipp was an adult businessman in his own home who invited the agents inside to talk because he believed he had nothing to hide. During the interview, the agents did not tell him that he was required to answer their questions, they did not offer a deal in exchange for Hipp's statements, and they did not make any promise of leniency or promise that Hipp would not be charged if he talked to them. The court did not credit Hipp's testimony that Longa told him he would be arrested if he did not answer the agent's questions, a finding Hipp does not challenge on appeal.

Longa's statements that the agents "need[ed] to talk" to Hipp and that cooperating truthfully would be in his "best interest" were not sufficiently coercive to render Hipp's statements involuntary. A mere admonition to the accused to tell the truth does not render a statement involuntary. *United States v. Vera*, 701 F.2d 1349, 1364 (11th Cir.1983). Similarly, a general statement that cooperation may be beneficial to an accused, with no promise of leniency, does not amount to an illegal inducement. *See United States v. Nash*, 910 F.2d 749, 753 (11th Cir.1990) (holding that an agent's statement to the defendant that cooperating defendants generally "fared better time-wise" did not amount to an illegal inducement).

After hearing testimony from Longa and Hipp, the district court found that, in context, Longa's statement that he "need[ed] to talk" to Hipp was not a command to which Hipp simply submitted. Rather, Longa's statement was more a request that Hipp listen to what the agents had to say so that Hipp could make an informed choice about, potentially, telling the truth and cooperating with the government in its investigation of JCS. The district court's finding is fully supported by Longa's testimony that he told

Hipp their conversation need not take place then or there, giving Hipp the opportunity to decline the interview at that point, or even altogether, and that he advised Hipp to speak with a lawyer during the conversation. We therefore defer to the court's credibility determinations and findings regarding the nature of the encounter. *See Holt,* 777 F.3d at 1255. Consequently, Longa's statements that Hipp should tell the truth and that cooperating with the government would be in his best interest amounted to "no more than affording [Hipp] the chance to make an informed decision with respect to [his] cooperation with the government." *Ballard,* 586 F.2d at 1063; *see Nash,* 910 F.2d at 753; *Vera,* 701 F.2d at 1364.

Hipp's reliance on *Kaupp v. Texas,* 538 U.S. 626, 123 S.Ct. 1843, 155 L.Ed.2d 814 (2003), is wholly misplaced. The facts of this case are plainly not equivalent to "a group of police officers rousing an adolescent out of bed in the middle of the night with the words 'we need to go and talk,'" which, the Supreme Court found, "present[ed] no option but 'to go.'" *Id.* at 631, 123 S.Ct. at 1847. Voluntariness is a case-by-case determination, and similar words may have very different meanings in different contexts. *See Castaneda–Castaneda,* 729 F.2d at 1362.

The district court did not err in finding that Hipp's statements were voluntary and not the product of coercion. We affirm the court's denial of motion to suppress.

### III.

Next, Hipp argues that the district court erred in denying his motion for a mistrial because two statements in the prosecutor's closing argument amounted to prosecutorial misconduct.

Allegations of prosecutorial misconduct present mixed questions of fact and law that are reviewed *de novo. United States*

*v. Eckhardt,* 466 F.3d 938, 947 (11th Cir. 2006). To establish prosecutorial misconduct in closing argument, the defendant must show that the prosecutor's remarks were (1) improper and (2) prejudicially affected his substantial rights. *United States v. Lopez,* 590 F.3d 1238, 1256 (11th Cir.2009). To show prejudice to substantial rights, a defendant must establish a reasonable probability that, but for the remarks, the outcome of the trial would have been different. *Id.*

The sole purpose of closing argument is to assist the jury in analyzing the evidence presented at trial. *United States v. Bailey,* 123 F.3d 1381, 1400 (11th Cir.1997). During closing arguments, prosecutors are forbidden to make improper suggestions, insinuations, or assertions calculated to mislead the jury or to appeal to the jury's passion or prejudice. *United States v. Rodriguez,* 765 F.2d 1546, 1560 (11th Cir. 1985). Nonetheless, the prosecutor may urge the jury to draw inferences and conclusions fairly suggested by the evidence produced at trial. *United States v. Johns,* 734 F.2d 657, 663 (11th Cir.1984). And "there is no prohibition on colorful and perhaps flamboyant remarks" if they relate to, and do not exceed, the evidence adduced at trial. *Bailey,* 123 F.3d at 1400 (internal quotation marks omitted).

In evaluating whether a defendant's substantial rights have been affected by an improper remark, we consider the misconduct "in the context of the entire trial, along with any curative instruction." *Lopez,* 590 F.3d at 1256. The relevant context includes the (1) severity of the remarks; (2) whether the remarks are isolated or extensive; (3) whether the remarks were accidental or deliberate; and (4) the strength of the government's case against the defendant. *See id.* We have stated that "[w]hen the record contains

sufficient independent evidence of guilt, any error is harmless." *Eckhardt*, 466 F.3d at 947. And, in general, improper statements can be cured by the court's instruction to the jury that only the evidence in the case be considered in evaluating the defendant's guilt, unless the misconduct "is so prejudicial as to be incurable by that measure." *Lopez*, 590 F.3d at 1256 ("We presume that the jury followed the district court's curative instructions.").

■ Here, we agree with the district court that the prosecutor's comment that Hipp "obstructed the grand-jury investigation," was proper argument arising fairly and directly from the evidence produced at trial that reflected on his culpability in JCS's fraudulent scheme. *See Johns*, 734 F.2d at 663. Hipp's contention that there was no evidence at trial that he obstructed the grand-jury investigation is wrong. The evidence indicated that, in response to a grand-jury subpoena issued on February 6, 2014, Hipp was involved in creating a back-dated, fabricated email to give an appearance of legitimacy to JCS's business. The grand jury requested records likely within Hipp's control as head of manufacturing. From this evidence, the jury could have concluded that Hipp helped produce false documentation in response to a grand-jury subpoena to create the appearance of legitimacy to JCS's fraud.

We also agree with the district court that the prosecutor's comment that "this is a case as blatant as you will ever get in a court of law of outright fraud" was improper. *See Dunn v. United States*, 307 F.2d 883, 885 (5th Cir.1962) (holding that a prosecutor's comment that "the case was the most flagrant he had ever tried and was replete with fraud" was improper). The prosecutor statement comes too close to offering the prosecutor's own opinion on

the evidence based on a comparison between this case and other cases of fraud in courts of law. *Cf. Parker v. Allen*, 565 F.3d 1258, 1273 (11th Cir.2009) ("During a trial, counsel have a duty to refrain from commenting on their personal views on a defendant's guilt and the evidence."). The comment could be read as suggesting that the jury take the prosecutor's word that the evidence in this case is strong (as compared to other cases), instead of evaluating the strength of the evidence produced at trial. Accordingly, the comment was improper.

■ Nevertheless, to obtain relief based on the improper comment, Hipp must also show that his substantial rights were affected. *See Lopez*, 590 F.3d at 1256. Viewing the improper comment in the context of the trial as a whole, Hipp has not made that showing. The isolated comment occurred near the end of a nine-day trial, and the district court found it did not even come close to being substantially prejudicial. *See United States v. Simon*, 964 F.2d 1082, 1087 (11th Cir.1992) ("Considerable weight is given to the trial judge's assessment of the prejudicial effect of the prosecutor's comments."). The record also contained ample evidence of guilt, including Hipp's own statements, admitted through Agent Longa's testimony, conceding his knowledge of and involvement in JCS's fraud. *See Lopez*, 590 F.3d at 1256.

While *Dunn* found a similar comment to be prejudicial enough to warrant a new trial, the comment in *Dunn* was made in the prosecutor's opening statement and so was much more likely to "permeate[ ] the entire atmosphere of the trial." *United States v. Woods*, 684 F.3d 1045, 1065 (11th Cir.2012) ("Reversal on the basis of prosecutorial misconduct requires that the misconduct be so pronounced and persistent that it permeates the entire atmosphere of the trial.") (quoting another source). The

comment in *Dunn* also was accompanied by another prejudicial and unsupported statement. 307 F.2d at 886. Here, by contrast, the comment was isolated and did not permeate the trial. *See Lopez,* 590 F.3d at 1256.

Finally, the court's numerous curative instructions eliminated any prejudice that arguably stemmed from the prosecutor's comment. *See id.* The district court repeatedly instructed the jury that "what the lawyers are saying is not evidence" and that the jury must evaluate Hipp's guilt based on only the evidence presented at trial. The prosecutor's remark was not "so prejudicial as to be incurable" by curative instructions. *See id.*

Because Hipp has not shown that his substantial rights were affected by the prosecutor's improper comment, we affirm the district court's denial of Hipp's motion for a mistrial.

### IV.

In sum, the district court properly denied Hipp's motion to suppress and his motion for a mistrial. We therefore affirm his convictions.

**AFFIRMED.**