**Opinion filed May 25, 2017**



In The

# Eleventh Court of Appeals

_____

## No. 11-15-00106-CR

_____

**STEVEN DALE HAWKINS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 106th District Court**
**Gaines County, Texas**
**Trial Court Cause No. 03-3319**

### O P I N I O N

In 2003,[1] the jury convicted Steven Dale Hawkins of one count of aggravated sexual assault (Count One), three counts of indecency with a child by contact (Counts Two, Four, and Six), and three counts of indecency with a child by exposure (Counts Three, Five, and Seven). The jury assessed his punishment at confinement

---

[1]In 2015, the Court of Criminal Appeals granted Appellant's request to file an out-of-time appeal.

for seventy-five years in the Institutional Division of the Texas Department of Criminal Justice on the aggravated sexual assault conviction. On each of the three convictions for indecency with a child by contact, the jury assessed Appellant's punishment at confinement for a term of twenty years. On each of the three convictions for indecency with a child by exposure, the jury assessed Appellant's punishment at confinement for ten years. Furthermore, the trial court ordered that the twenty-year sentences for Counts Four and Six are to run consecutively to each other and consecutively to the seventy-five year sentence for Count One.

In three issues on appeal, Appellant contends that (1) the trial court abused its discretion when it denied Appellant's motion to suppress his statement, (2) Appellant's double jeopardy rights were violated as a result of his convictions on Counts Five and Seven, and (3) the evidence was legally insufficient to support Appellant's convictions for Counts Five and Seven. We affirm.

*Background Facts*

The victim, K.M., is Appellant's niece by marriage. In November 2001, when K.M. was ten years old, K.M.'s mother abandoned her. K.M. and her two brothers moved in with their aunt, Melissa Linzy. Appellant was Linzy's husband. Linzy and Appellant had three children together. Between November 2001 and February 2003, Appellant, Linzy, K.M., K.M.'s two brothers, and K.M.'s three cousins were all living together in a three-bedroom mobile home in Seminole.

When K.M. was eleven years old, Appellant began to abuse her. K.M. described a series of incidents that occurred over the course of a year. K.M. testified that Appellant came into her bedroom while she was lying in bed. Appellant asked K.M. to put his "private" in her mouth, and she did so. K.M. testified that this happened "a lot of other times."

2

K.M. testified that, while she was sitting on the couch watching cartoons, Appellant asked her to rub his feet. K.M. complied. While K.M. was rubbing Appellant's feet, Appellant asked K.M. to rub his "private." K.M. again complied.

K.M. testified that an incident took place in the laundry room. Appellant put his "private" in K.M.'s mouth. She also testified that Appellant "put his private in [hers]." K.M. again stated that she saw Appellant's "private" "a lot of times" and that Appellant made her touch his "private" a lot.

Next, K.M. testified that she was sitting on the couch playing Nintendo when Appellant put K.M.'s hand on Appellant's "private." Finally, K.M. testified that she was sitting outside in the car with Appellant when Appellant put his "private" in her mouth.

In December 2002, K.M. approached Linzy and told her about the abuse. Linzy told Appellant about K.M.'s outcry, and they agreed to tell the police. One and one-half weeks later, on January 2, 2003, Linzy took K.M. to the police department. Linzy told Appellant that she and K.M. were going to talk to the police. At the police department, Linzy told Officers Ted Wadsek and Chad Hallum about K.M.'s outcry.

Officers Wadsek and Hallum accompanied Linzy and K.M. back to their residence. Officer Wadsek was in uniform and drove a marked patrol car, and Officer Hallum was in plain clothes and drove an unmarked patrol car. Officer Hallum followed Linzy into the house, while Officer Wadsek remained outside with K.M.

Once inside the house, Officer Hallum asked Appellant to come to the police department to talk to him. Appellant agreed. Officer Hallum did not tell Appellant that he was under arrest and did not place Appellant in handcuffs. At the police

3

department, Officer Hallum read Appellant the *Miranda*[2] warnings and asked Appellant if he would like to "tell his side of the story." Appellant waived his *Miranda* rights and gave a statement to Officer Hallum.

Appellant described three separate occasions where he sexually abused K.M. First, Appellant stated that, eight months prior to giving his statement, he and K.M. were sitting on the couch when Appellant asked K.M. to rub his feet. While K.M. was rubbing Appellant's feet, Appellant asked K.M. to rub his "stuff." K.M. complied with Appellant's request.

Second, Appellant described an incident in the laundry room that occurred a couple months later. Appellant stated that, over the course of several days, he twice asked K.M. to suck his penis, and K.M. told him no. Finally, Appellant asked K.M. a third time, and she complied.

Third, Appellant stated that, at the end of December 2002, he was sitting in a chair in the living room while the children were in another room playing. Appellant called K.M. into the living room and asked her to rub his penis. K.M. complied. After Appellant gave his statement, Officer Hallum dropped Appellant off at a friend's house.

*Analysis*

*Double Jeopardy Claim and Sufficiency of the Evidence*

In his second issue, Appellant contends that his convictions for Counts Five and Seven constituted double jeopardy violations. Counts Five and Seven alleged indecency with a child by exposure. According to Appellant, "[t]he jury appears to have convicted appellant [of Counts Five and Seven] on the same evidence as the other Counts [for indecency by contact and aggravated sexual assault]." Appellant contends that Counts Five and Seven are "subsumed" by the other counts and that

---

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

punishing Appellant for Counts Five and Seven violates his protection from double jeopardy.

We note at the outset that Appellant did not raise his double jeopardy claim in the trial court. Because of the fundamental nature of the double jeopardy protections, however, a double jeopardy claim may be raised for the first time on appeal or on collateral attack if two conditions are met: (1) the undisputed facts show that the double jeopardy violation is clearly apparent on the face of the record and (2) when enforcement of the usual rules of procedural default serves no legitimate state interest. *See Gonzalez v. State*, 8 S.W.3d 640, 643–46 (Tex. Crim. App. 2000). In this case, the record is fully developed for determining whether Appellant's double jeopardy protections were violated, and no legitimate state interests would be served by not addressing Appellant's claim. *See Ex parte Denton*, 399 S.W.3d 540, 544–45 (Tex. Crim. App. 2013).

Under the United States Constitution, the Double Jeopardy Clause provides, in part, that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend V. "The Double Jeopardy Clause protects criminal defendants from three things: 1) a second prosecution for the same offense after acquittal; 2) a second prosecution for the same offense after conviction; and 3) multiple punishments for the same offense." *Ex parte Milner*, 394 S.W.3d 502, 506 (Tex. Crim. App. 2013) (citing *Brown v. Ohio*, 432 U.S. 161, 165 (1977)). Since Appellant's convictions stem from a single indictment and a single trial, his double jeopardy claim involves the third category of the above-listed protections— the protection from multiple punishments for the same offense. This protection prevents a court from prescribing greater punishment than the legislature intended. *Ex parte Benson*, 459 S.W.3d 67, 71 (Tex. Crim. App. 2015).

On several recent occasions, the Texas Court of Criminal Appeals has addressed the double jeopardy implications of sexual misconduct cases. *See*

*Speights v. State*, 464 S.W.3d 719 (Tex. Crim. App. 2015); *Maldonado v. State*, 461 S.W.3d 144 (Tex. Crim. App. 2015); *Aekins v. State*, 447 S.W.3d 270 (Tex. Crim. App. 2014); *Loving v. State*, 401 S.W.3d 642 (Tex. Crim. App. 2013); *Patterson v. State*, 152 S.W.3d 88 (Tex. Crim. App. 2004). We note at the outset that all of these opinions were issued after the trial in this case in 2003. In *Patterson*, the first opinion in this series of cases, the Court of Criminal Appeals addressed whether indecency by exposure and indecency by contact may be "subsumed" by a penetration offense when the offenses are committed as a single act. 152 S.W.3d at 92; *see Maldonado*, 461 S.W.3d at 145–47 (explaining decision in *Patterson*). This concept is referred to as the "subsumption theory" or the "subsumption doctrine." *Maldonado*, 461 S.W.3d at 145–47. Appellant relies on *Patterson* to assert that his convictions for Counts Five and Seven are subsumed by his convictions for Counts Four and Six. In its subsequent opinions, the Court of Criminal Appeals analyzed the facts of each case to determine if *Patterson*'s subsumption doctrine applied. The most recent cases in this series are *Speights* and *Maldonado*. Under each of these cases, we conclude that Appellant's convictions for indecency by exposure under Counts Five and Seven are not subsumed by his convictions for indecency by contact under Counts Four and Six.

*Speights* involved a defendant convicted of indecency by contact and indecency by exposure. 464 S.W.3d at 720. At issue in *Speights* was whether the defendant's conviction for indecency by exposure was subsumed by his conviction for indecency by contact. *Id.* Thus, from the perspective of the nature of the charges at issue, *Speights* is similar to the present case because Appellant is asserting that two of his convictions for indecency by exposure are subsumed by two of his convictions for indecency by contact. In reliance upon *Loving*, the Court of Criminal Appeals concluded in *Speights* that indecency by exposure is not subsumed by a

conviction for indecency by contact even if they occur during the same criminal act. *Id.* at 721–724 (citing *Loving*, 401 S.W.3d at 648–49).

The Court of Criminal Appeals recognized in *Speights* that "what constitutes the 'same' offense for double jeopardy purposes in the multiple-punishments context is strictly a matter of legislative intent: how many different offenses did the Legislature contemplate an accused should be susceptible to being punished for?" *Id.* at 722 (quoting *Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014)). The court referred to this question as a "'unit[s] of prosecution' analysis." *Id.* (alteration in original) (quoting *Garfias*, 424 S.W.3d at 58). The court then cited *Loving* for its determination of the allowable units for prosecution for indecency with a child. *Id.* at 722–24. The court stated:

> In *Loving*, we explained, "indecency with a child by exposure and by contact protect children from different potential harms." In this regard, the relationship of "exposure" to "contact" within our indecency with a child statute is similar to the relationship between different kinds of contact involving different parts of the body within that same statute, *i.e.*, anus, breast, or genitals. As we explained in *Loving*, "because the subsection prohibits the commission of any one of those acts, each act is a separate offense," and as such, a discrete allowable unit of prosecution.

*Id.* at 723 (citations omitted) (quoting *Loving*, 401 S.W.3d at 648–49).

The court held in *Speights* that indecency by contact and indecency by exposure constitute separate allowable units of prosecution. *Id.* "When both offenses are committed, they both may be tried, and the defendant may be convicted and sentenced for both in a single prosecution as well." *Id.* at 723–24. "[T]he Legislature intended that both theories of indecency with a child may be pled and punished, *even when the exposure precedes the contact and even when both acts occur within the same transaction*." *Id.* at 724 (emphasis added). In this situation,

the only remaining question to answer is whether the evidence supports a conviction under each theory of the offense. *Id.*

Finally, the court noted that the subsumption theory of *Patterson* was not implicated with indecency offenses where the defendant was not charged with a greater offense that involved penetration. *Id.* at 724 n.7. As noted by the court, when the greater offense is indecency, "*Loving* controls." *Id.* Thus, under *Speights* and *Loving*, Appellant's convictions for indecency by exposure are not subsumed under his convictions for indecency by contact under *Patterson*'s subsumption doctrine because "the legislature intended to allow separate punishments for each prohibited act." *Maldonado*, 461 S.W.3d at 149 (discussing the holding in *Loving*).

*Maldonado* recognized another factor that limits the application of *Patterson*'s subsumption theory. *Id.* "*Patterson* is properly applied when, under the facts of the case, the jury could not have found separate offenses or separate acts." *Id.* As set forth in greater detail below, the evidence in this case establishes numerous instances wherein Appellant committed indecency by contact and indecency by exposure. *See id.*

In light of *Speights* and *Loving*, the resolution of Appellant's double jeopardy claims focuses on how many units of prosecution have been shown by the evidence at trial. *See Speights*, 464 S.W.3d at 724. With respect to his double jeopardy claim, Appellant contends "that there is no evidence of additional offenses that would allow a jury to convict Appellant on Counts 5 and 7." We additionally note that, in this third issue, Appellant contends that the evidence is legally insufficient to support Appellant's convictions for Counts Five and Seven. Accordingly, we will analyze the evidence supporting Appellant's convictions for Counts Five and Seven in order to resolve his sufficiency and double jeopardy issues.

We review a challenge to the sufficiency of the evidence, regardless of whether it is denominated as a legal or factual sufficiency challenge, under the

standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

K.M. described six distinct incidents of sexual abuse by Appellant. First, K.M. described the incident in her bedroom where Appellant penetrated K.M.'s mouth with his "private." After K.M. described this incident, the prosecutor asked her if it happened "on other times," to which she replied in the affirmative. The prosecutor further asked her, "Did it happen a lot of times?" K.M. answered, "Yes." Second, K.M. described the incident where K.M. rubbed Appellant's feet and his "private." Specifically, K.M. testified that Appellant put her hand on his "private."

Next, K.M. described two incidents that happened in the laundry room. Appellant penetrated K.M.'s mouth and her "private" with his "private." When

9

discussing this incident, the prosecutor also asked K.M. if there were "other times he put your hand on it" and if it "happen[ed] a lot," to which K.M. replied in the affirmative. She also testified that she saw his private "a lot of times."

Next, K.M. described an incident where she contacted Appellant's "private" with her hand while playing video games in the living room. Finally, K.M. testified that Appellant penetrated her mouth with his "private" while they were sitting in the car. K.M.'s testimony about Appellant's sexual abuse concluded with the prosecutor asking her, "Do you know how many times this happened all together, [K.M.]?" She replied, "A lot."

In addition to K.M.'s testimony, Appellant, in his written statement, described three occasions where he sexually abused K.M. Two of the incidents described by Appellant in his statement to Officer Hallum seem to match K.M.'s testimony (the incident where K.M. rubbed Appellant's feet and the incident in the laundry room). However, Appellant described a third incident that did not correlate with any of K.M.'s testimony and, thus, appears to be a separate incident. Appellant stated that he was sitting in the living room while the children were in another room playing. He called K.M. into the living room. Appellant stated that he "pulled [his] penis out and she started rubbing it."

Appellant has challenged the sufficiency of the evidence supporting two of his convictions for indecency by exposure. He was convicted of three acts of indecency by exposure. The evidence in this case shows that Appellant committed at least seven distinct sexual acts against K.M. In four of the seven incidents described at trial, Appellant penetrated K.M. However, Appellant was only convicted of one act of penetration. The remaining three incidents of penetration necessarily involved the commission of indecency by contact and indecency by exposure under the analysis in *Patterson*. Furthermore, K.M. testified that Appellant's acts of sexual abuse happened "a lot," including his acts of indecency

10

by exposure. This testimony constitutes evidence that Appellant committed indecency by exposure on multiple occasions. *See Klein v. State*, 273 S.W.3d 297, 301–03 (Tex. Crim. App. 2008); *Dixon v. State*, 201 S.W.3d 731, 734 (Tex. Crim. App. 2006). Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found that Appellant committed indecency by exposure on at least three occasions, including the two occasions for which he has challenged the sufficiency of the evidence and asserted that his double jeopardy rights were violated. Therefore, we overrule Appellant's second and third issues.

*Suppression of Appellant's Statement*

In his first issue, Appellant contends that the trial court abused its discretion by denying his motion to suppress his statement to Officer Hallum because Appellant did not give his statement voluntarily. We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). In reviewing a ruling on a motion to suppress, we apply a bifurcated standard of review. *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016); *Martinez*, 348 S.W.3d at 922–23. We afford almost total deference to the trial court's determination of historical facts and of mixed questions of law and fact that turn on the weight or credibility of the evidence. *Brodnex*, 485 S.W.3d at 436; *Martinez*, 348 S.W.3d at 922–23. We review de novo the trial court's determination of pure questions of law and mixed questions of law and fact that do not depend on credibility determinations. *Brodnex*, 485 S.W.3d at 436; *Martinez*, 348 S.W.3d at 923.

Appellant asserts that his confession was involuntary because it was the result of an illegal arrest. Appellant argued in his motion to suppress that his statement was involuntary because it was induced by a promise of leniency. At the suppression hearing, Appellant argued that, in addition to being induced by a promise, his

confession was the result of a custodial interrogation with improper warnings. At the conclusion of the hearing, the trial court ruled "that this was not a custodial interrogation and that the statement was given voluntarily." Appellant then filed a motion to reconsider, arguing that his confession was the result of an illegal arrest. The trial court denied the motion to reconsider, and Appellant's statement was admitted.

A confession that is tainted by the "exploitation of an illegal arrest" cannot be admitted as evidence. *Brown v. Illinois*, 422 U.S. 590, 603 (1975). When the State seeks to introduce evidence of such a confession, it has the burden to show that the causal connection between the confession and the Fourth Amendment violation resulting from the illegal arrest, or "seizure," has been removed. *Dunaway v. New York*, 442 U.S. 200, 204 (1979). Therefore, the first step in our inquiry is to determine whether or not Appellant was "seized" within the meaning of the Fourth Amendment. *Id.* at 206–07.

A law enforcement officer can seize a person by either the use of physical force or a show of authority to which the person submits. *California v. Hodari D.*, 499 U.S. 621, 625 (1991); *Johnson v. State*, 912 S.W.2d 227, 232 (Tex. Crim. App. 1995). A show of authority occurs when, considering the totality of the circumstances, a reasonable person would have believed he was not free to leave. *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988) (holding that a person is seized when "a reasonable person would have believed that he was not free to leave"); *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (same); *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010) ("[A]n investigative detention occurs when a person yields to the police officer's show of authority under a reasonable belief that he is not free to leave.").

Appellant testified at the suppression hearing. Appellant stated that on January 2, Officers Hallum and Wadsek came to his house. Officer Hallum followed

Linzy inside. Officer Hallum told Appellant that Appellant needed to come with him to the police department. Appellant believed that, if he did not go with Officer Hallum, he would be arrested. Appellant agreed to go to the police department, and Officer Hallum put Appellant in his squad car. Officer Wadsek followed in his vehicle.

Officer Hallum also testified at the suppression hearing. He stated that the primary purpose of going to the residence was to escort K.M. back home. When Officers Hallum and Wadsek arrived at Appellant's residence, Linzy let Officer Hallum inside. After he entered the residence, Officer Hallum asked Appellant to come with him to the police department. Officer Hallum did not tell Appellant that he was under arrest and did not handcuff Appellant. In Officer Hallum's opinion, Appellant voluntarily agreed to go to the police department.

We conclude that Appellant was not seized within the meaning of the Fourth Amendment when he accompanied Officer Hallum to the police department. Appellant relies on *Dunaway* and *Kaupp v. Texas*, 538 U.S. 626 (2003), for his contention that he was illegally arrested. In *Dunaway*, three officers went to the defendant's home and took the defendant into custody. *Dunaway*, 442 U.S. at 203. Although the defendant was not told he was under arrest, he "would have been physically restrained if he had attempted to leave." *Id.*

In *Kaupp*, three detectives and three police officers visited the home of a seventeen-year-old suspect at 3:00 a.m. *Kaupp*, 538 U.S. at 628. After the suspect's father let the officers in the house, three of the officers went to the suspect's bedroom and awakened him with a flashlight. *Id.* The officers handcuffed the suspect and took him to a patrol car; the suspect was wearing nothing but boxers and a T-shirt. *Id.* The officers drove the suspect to the crime scene, sat there with him for five or ten minutes, then drove him to the police station and questioned him. *Id.* In both

13

*Dunaway* and *Kaupp*, the Supreme Court held that, although there was no formal arrest, the defendant in each case was "seized" within the meaning of the Fourth Amendment. *Dunaway*, 442 U.S. at 216; *Kaupp*, 538 U.S. at 632. We believe that these cases are distinguishable from the case here.

First, rather than an encounter with multiple police officers, this case involves an encounter with one police officer wearing plain clothes. Officer Wadsek did not enter Appellant's home. *See Hunter v. State*, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997) (the fact that the officer questioning the suspect was in plain clothes and that the other officer stood several feet away from the suspect were factors that weighed against a finding that a detention occurred). Second, unlike in *Dunaway*, there is no evidence that Officer Hallum indicated to Appellant that his failure to come to the police department would result in Appellant being physically restrained. *See Anderson v. State*, 932 S.W.2d 502, 505–06 (Tex. Crim. App. 1996) (even though the officer intended to restrain the defendant if he did not voluntarily accompany him, the failure to communicate this intention could not have caused the defendant to believe he was not free to leave). Finally, before speaking to police, Linzy told Appellant that she was about to take K.M. to the police department and tell them about K.M.'s outcry. Therefore, Appellant was aware that he was a suspect in the investigation of K.M.'s abuse. "[A] person who voluntarily accompanies investigating police officers to a certain location—knowing that he is a suspect—has not been 'seized' for Fourth Amendment purposes." *Anderson*, 932 S.W.2d at 505 (quoting *Livingston v. State*, 739 S.W.2d 311, 327 (Tex. Crim. App. 1987)).

Therefore, Appellant was not "seized" within the meaning of the Fourth Amendment. Since Appellant was not arrested, we need not address whether the circumstances surrounding Appellant's confession sufficiently "broke the causal chain" between his arrest and his confession. *See Brown*, 422 U.S. at 597. We overrule Appellant's first issue.

14

*This Court's Ruling*

We affirm the judgments of the trial court.

JOHN M. BAILEY

JUSTICE

May 25, 2017

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.